434 A.2d 1173

COMMONWEALTH of Pennsylvania

v.

**Jose BERRIOS, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 28, 1981.

Decided Sept. 24, 1981.

Lewis S. Small, Philadelphia, for appellant.

Robert B. Lawler, Philadelphia, Sarah B. Vandenbraak, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Jose Berrios stands convicted of murder of the second degree, burglary, and arson for his involvement in the burning of a home in Philadelphia and the death of one of its residents. On this appeal, appellant seeks to be discharged on the ground that the evidence does not support the convictions or, alternatively, to be granted a new trial on multiple grounds of alleged trial error. We reject appellant's contentions and affirm.

### Background

The fatal fire occurred at the Vargas residence in the early morning hours of July 27, 1978. Five of the six residents escaped by leaping from upper-story windows. The victim, Jose Vargas, was unable to escape, and died as a result of smoke inhalation and thermal burns.

Fire investigators determined that the fire had originated at the foot of the inside stairs of the residence, and had been deliberately set with an inflammable liquid. An empty can was recovered from the point of origin of the fire.

Through further investigation, fire investigators located a self-service gasoline station in the neighborhood of the Vargas residence which had been open shortly before the fire occurred. Edward Deissler, the station attendant, told Lieutenant Quinn of the Fire Marshall's Office that, shortly before the fire began, he had sold gasoline to a customer carrying a can. Deissler, who had several minutes to view the customer in the station's artificial lighting, provided a general description of the customer. Deissler identified the can which had been recovered as the can into which the customer had placed the purchased gasoline.

Police detectives questioned Gilbert Perez, an occupant of the Vargas residence and brother-in-law of the victim. They learned that appellant had been in an argument late the previous evening with another brother-in-law of Perez, George Vargas, outside the Vargas residence. Perez stated that, although there had been no physical confrontation between appellant and George Vargas, appellant had left threatening to return and kill George Vargas.

Station attendant Deissler was then interviewed a second time, by Police Detective Paris. When asked to identify the customer from a group of five photographs, Deissler selected two. One of the two photographs which Deissler selected was a picture of appellant.

On August 1, 1978, police filed a criminal complaint against appellant and obtained a warrant for his arrest. Police were unsuccessful in their efforts to apprehend appellant. On August 16, appellant surrendered, but denied involvement.

On August 31, over one month after the pre-arrest investigatory photo display, station attendant Deissler identified appellant from a line-up of six persons as the person who had purchased gasoline shortly before the fire. Appellant was represented by counsel, who actively participated in the arrangement of the line-up.

Before trial, appellant filed a motion to suppress the line-up identification as overly suggestive. After an evidentiary hearing, the suppression court denied relief.

At trial, before a jury, the Commonwealth presented testimony describing the argument between appellant and the victim's brother, as well as appellant's threats to kill. Gasoline station attendant Deissler testified for the Commonwealth that appellant was the customer who had purchased gasoline shortly before the fire and placed it in the can recovered from the scene. Deissler also testified that he had identified appellant at the line-up.

Appellant presented an alibi. Additionally, on cross-examination of Deissler, counsel for appellant brought out Deissler's inability to confirm appellant's identity at the pre-arrest photo display. Appellant also presented the testimony of Alfred Jasper, an inmate at the Federal Penitentiary in Atlanta, who claimed that a fellow inmate had admitted exclusive responsibility for the fatal fire. Jasper, however, would not reveal the identity of the fellow inmate.

After the denial of written post-verdict motions, the court imposed a sentence of life imprisonment on the murder conviction, and ten to twenty years' imprisonment on the burglary and arson convictions. The latter sentences are to run concurrent to each other, but consecutive to the sentence of life imprisonment. This appeal followed.[1]

### Alleged Insufficiency of the Evidence

 In challenging the sufficiency of the evidence, appellant points to the lack of direct proof linking him to the setting of the fire. Appellant is correct that the Commonwealth presented no direct evidence that he set the blaze. However, as this Court has stated,

> "[w]hile it is clear that a criminal conviction may not be based upon mere surmise or conjecture, the Commonwealth's burden in proving a criminal offense or the elements thereof may be sustained by means of wholly circumstantial evidence."

1. Appellant has not filed a separate appeal from the non-homicide convictions in the Superior Court. However, the Commonwealth does not raise an objection. Thus, in the interest of judicial economy, this Court will consider appellant's claims as they relate to the non-homicide convictions. See *Commonwealth v. Shain*, 493 Pa. 360, 363 n.1, 426 A.2d 589, 590 n.1 (1981).

*Commonwealth v. Thomas,* 465 Pa. 442, 446–47, 350 A.2d 847, 849 (1976). Here, the Commonwealth showed that appellant had quarreled with the victim's brother outside the Vargas residence, vowed to return to kill the brother, and purchased gasoline at a neighborhood gasoline station shortly before the fire. The can into which the purchased gasoline was placed was recovered from the point of origin of the fire. Viewing this evidence, as we must, in the light most favorable to the Commonwealth, and drawing all inferences in the Commonwealth's favor, e. g., *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976), it must be concluded that the jury could determine, beyond a reasonable doubt, that it was appellant who entered the Vargas residence intending to burn the occupied structure and who set the fatal fire.

### Alleged Trial Errors

■ Appellant's first claim of trial error is the court's refusal to suppress the testimony of station attendant Deissler that he had identified appellant at the line-up conducted after appellant's arrest. Appellant argues that the line-up should have included the person whose picture Deissler had selected along with the picture of appellant at the pre-arrest photo display conducted over one month earlier. In appellant's view, without this other person the line-up was so overly suggestive as to create a very substantial likelihood of misidentification, in violation of *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Appellant's contention must be rejected. The record establishes that each of Deissler's identifications was the product of fair procedure. At both the pre-arrest photo display and the post-arrest line-up, Deissler viewed groups of several persons of similar appearance, including similar national origin and, at the line-up, similar height. Police made no effort to exert any form of suggestive pressure on the witness. Indeed, at the line-up, counsel for Deissler was permitted to alleviate perceived deficiencies in the arrange-

ment of persons viewed. In these circumstances, the lack of inclusion at the line-up of the other person selected by Deissler at the pre-arrest photo display affected only the credibility of Deissler, and not the admissibility of his testimony. No effort was made to restrict defense counsel's cross-examination of Deissler on this matter, and appellant cannot prevail.

■ Appellant's second claim of trial error relates to testimony of Iris Rodriguez, sister of the victim and resident of the Vargas home. Rodriguez testified that shortly after the argument involving appellant which had preceded the fire, she saw appellant "rushing" at a group of people waiting for a bus and "snatch[ing] something." In appellant's view, this testimony improperly conveyed to the jury that appellant had engaged in the crime of theft, for which he was not on trial.

When Rodriguez testified that appellant had "snatched something," counsel for appellant objected only on the ground of irrelevance, without any objection relating to the testimony's suggestion of other criminal conduct. Thus, appellant's contention will not be reviewed. See, e. g., *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ Appellant's third claim of trial error challenges a ruling of the court which permitted Lieutenant Quinn of the Fire Marshall's Office to read to the jury a prior statement of station attendant Deissler. The statement, read to the jury after Deissler had completed his testimony, had been given to Quinn before Deissler viewed the photo display. In the statement, Deissler described the customer who had purchased the gasoline as wearing a mustache.

Relying upon the principles set forth in *Commonwealth v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972), appellant maintains that a prior statement may be read to the jury only if it is alleged that the declarant's in-court testimony has recently been fabricated or that the declarant's motives are

corrupt. In appellant's view, neither of these exceptional circumstances is present here.

Appellant overlooks a separate, valid basis for the reading of Deissler's prior statement. Throughout cross-examination, the defense confronted Deissler with statements made after the interview with Lieutenant Quinn in which Deissler, contrary to his testimony on direct examination, could not recall whether appellant had been wearing a mustache when he purchased the gasoline. Our case law recognizes that

> "[i]n an effort to dispel the effect of prior inconsistent statements it is possible to rehabilitate a witness by showing that he made prior statements, antedating the prior inconsistent statement, and consistent with his testimony at trial. McCormick, Evidence, § 49 (1954)."

*Commonwealth v. Fisher*, 447 Pa. 405, 415, 290 A.2d 262, 268 (1972). Thus, use of the consistent statement, which predated the claimed inconsistent statements, was proper rehabilitation of Deissler, without regard to whether there existed allegations of recent fabrication or corrupt motive.

■ In his fourth claim of trial error, appellant challenges the admissibility of police testimony describing efforts made to locate and arrest him. Included in the challenged evidence is testimony that, shortly after the fire, in an unsuccessful attempt to locate appellant, an officer had shown a photograph of appellant to other persons residing at appellant's address, and that, by the time of surrender, appellant had grown a beard. Appellant argues that, without evidence that appellant had known that he was wanted for the offenses, there was no foundation for introducing the evidence of beard growth with the attendant inference of consciousness of guilt, see *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973).

The evidence relating to the police officer's efforts to locate appellant provides a proper foundation for the introduction of evidence that appellant had grown a beard. In *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978), an analogous record indicated that the appellant, as here,

had abandoned his normal pattern of living, frustrating police efforts to locate him. This Court concluded that there was a permissible inference that the appellant "was aware that he was being sought by the police authorities . . . and that he deliberately attempted to conceal his whereabouts to avoid prosecution." 482 Pa. at 143, 393 A.2d at 420. See also *Commonwealth v. Tinsley*, 465 Pa. 329, 350 A.2d 791 (1976). Thus we are satisfied that the Commonwealth established a proper foundation to support an inference of consciousness of guilt.[2]

■ Appellant's fifth claim of trial error is a challenge to Detective Paris's testimony concerning the pre-arrest photo identification of station attendant Deissler. In this testimony, presented after counsel for appellant had cross-examined Deissler on his equivocal photo identification, Paris described the circumstances of the photo display, and sought to dispel any suggestion of improper influence. Appellant now claims that the testimony was inadmissible because the source of the photos was not properly established, see *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972), and also because the testimony was an improper effort to bolster Deissler's credibility.

Appellant has failed to demonstrate any prejudice from the introduction of the police testimony. In any event, at no time during the officer's testimony did appellant lodge objection to the now-challenged aspects of the police testimo-

2. In an argument related to the lack of proper foundation for the evidence of beard growth, appellant contends that the court had no basis to charge the jury on consciousness of guilt. For the reasons stated in text, this argument is without merit.

Appellant now objects that references to appellant's photograph, in the context of the unsuccessful effort to locate him, improperly suggested that appellant had a prior police record. See generally *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). However, throughout the offer of proof relating to Detective Paris's proposed testimony, appellant confined his objection to the issue of proper foundation for the evidence of beard growth. The objection, therefore, will not be considered. See II Henry on Pennsylvania Evidence § 724 at p. 151 (1953).

ny. Appellant's claim, therefore, is not properly preserved for appellate review. See, e. g., *Commonwealth v. Clair,* supra.

■ Appellant's sixth claim of trial error relates to his efforts to cross-examine Detective Paris regarding the photo display. On cross-examination, the defense sought to establish suggestiveness in the photographic identification on the theory that before Deissler's pre-arrest view of the photos, appellant had been identified by Gilbert Perez, one of the residents of the Vargas home, as the person who had been involved in the argument with the victim's brother, and who had vowed to return to the home and kill the brother. Appellant claims that the court unreasonably limited cross-examination of Paris, prejudicing his efforts to bring this information to the jury's attention.

Although the court sustained several Commonwealth objections to questions of the defense seeking to develop appellant's theory, the court at sidebar determined counsel's purpose and, without objection by the Commonwealth, permitted defense counsel to resume the line of questioning in suitable form. Thus, contrary to appellant's present assertion, his cross-examination was not limited. Hence no relief is warranted on this ground.

■ Appellant's seventh claim of trial error is a challenge to the ruling of the court permitting the Commonwealth to introduce a photograph of appellant taken after his arrest. The Commonwealth introduced the photograph to establish appellant's changed appearance, as evidence of consciousness of guilt. Appellant now contends that the court should have excised as prejudicial a police identification number appearing on the photograph.

Appellant has failed to establish any prejudice. Moreover, at trial, appellant's sole objection to the photograph related to lack of proper foundation for evidence of changed appear-

ance. Accordingly, appellant cannot prevail on this contention. See *Commonwealth v. Clair*, supra.

■ In his eighth claim of trial error, appellant challenges the propriety of a court ruling permitting the Commonwealth to cross-examine one of its rebuttal witnesses, Andrew Goosby, who along with Alfred Jasper allegedly heard an unidentified fellow inmate admit exclusive responsibility for the present crimes. Appellant points to instances when Goosby stated that he could not remember anything about the admission of the unidentified inmate and contends that the cross-examination was not proper. See *Commonwealth v. Turner*, 389 Pa. 239, 133 A.2d 187 (1957).

Appellant has overlooked important facts of record. The Commonwealth called Goosby to rebut the denials of Jasper and appellant on cross-examination that there had been any correspondence between Goosby and Jasper. Unexpectedly, Goosby also denied the existence of correspondence, despite his earlier testimony to the contrary at an in-camera hearing. In these circumstances, we are satisfied that the Commonwealth properly pled surprise, and that the court without error permitted the Commonwealth to cross-examine Goosby through his earlier testimony. See *Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973).

■ Appellant's ninth and final claim of trial error challenges the court's failure to declare a mistrial when in closing argument the prosecutor told the jury that the victim had "no future." This claim has not been properly preserved for appellate review. At trial, defense counsel requested only a cautionary instruction directing the jury not to base the verdicts on any consideration of sympathy for the victim. No request for a mistrial was made, and the court granted the request for a cautionary instruction. There is, therefore, no basis for relief. See *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974); see also *Commonwealth v. Jones*, 487 Pa. 183, 409 A.2d 25 (1979).

Judgment of sentence affirmed.