484 A.2d 171

**COMMONWEALTH of Pennsylvania**

v.

**Carl REDEL, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1984.

Filed Nov. 9, 1984.

Jeffrey M. Miller, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

Appellant, Carl Redel, was convicted by a jury of arson endangering property and creating a danger, arson endangering property in an attempt to collect insurance, risking a catastrophe, and recklessly endangering other persons, all in violation of Title 18 C.P.S. §§ 3301, 3302, 3304 and 2705, respectively.

A criminal mischief charge was withdrawn by the prosecution at the close of trial testimony. Appellant was acquitted of arson endangering other persons.

Appellant was sentenced to ten years reporting probation with mandatory out-patient psychotherapy and a fine of $10,000. Appellant's trial counsel filed post-verdict motions which were denied.

The relevant facts are as follows. On June 22, 1981, at approximately 3:00 A.M., the Philadelphia Fire Department was called to a fire at 1031 South 9th Street in Philadelphia. The building was owned by the appellant who used the first floor as a storage area for eggs in connection with his egg and poultry business. The appellant ran his business from two nearby buildings located at 1029 and 1037 South 9th Street.

A neighbor, Barbara Guarner, who was returning home with her husband from a trip to Atlantic City, observed fire coming from appellant's property. She also observed appellant in front of the building in a dazed condition. (N.T. 4.11) While Guarner phoned the fire department, her husband watched the appellant enter a silver Chrysler which was parked nearby. Appellant remained at the scene of the fire. Finally, he was ordered to move his car by a police officer but did not leave the area until Mrs. Guarner shouted to another officer that "he (appellant) was the one who came out of the building." (N.T. 4.12)

Appellant was stopped approximately two blocks from the fire scene. He was arrested by Officers Leo Judge, James Long, and Kathleen Long of the Philadelphia Police Department and was transported to police headquarters by

Officer James Long, who observed that Redel was "in shock," "white," "perspiring" and "smelled of gasoline." (N.T. 3.112)

Inside the car on the front seat, police officers found a box containing four empty one-gallon bleach jugs. Six more of the same type of container were found in the trunk. The vehicle smelled of gasoline (N.T. 1.32), and it was later determined that the jugs contained gasoline residue. (N.T. 5.27) It was the opinion of the Fire Marshal's expert that the fire was caused by ignited gasoline. (N.T. 4.100–4.101)[1] In addition, police officers found one empty matchbook, three packs of partially used matches and a complete wardrobe of laundered clothes sized to fit appellant in the car. (N.T. 4.36, 4.38, 4.39)

As the result of these incidents and the evidence found, appellant was charged with the crimes leading to this appeal.

Six issues are raised on appeal: (1) whether the Commonwealth violated appellant's Fifth Amendment right to remain silent by cross-examining appellant about his post-arrest silence and commenting upon it in closing argument; (2) whether the trial court erred in refusing to allow appellant to present relevant evidence that he was a Holocaust survivor to explain his conduct during arrest and his presence at the scene of the fire at 3:00 A.M.; (3) whether the District Attorney's argument that appellant's reputation was irrelevant because "Jean Harris" also had a good reputation before committing murder, and the prosecutor's statement that appellant said nothing when arrested because he knew he had been caught "red-handed," were inflammatory, misleading, and prejudicial remarks violating appellant's right to a fair trial; (4) whether the Commonwealth's prejudicial comments amounted to prosecutorial overreaching precluding retrial under the Double Jeopardy Clause of the Fifth Amendment; (5) whether the trial court

1. An expert witness called by the defense maintained that this liquid was kerosene, not gasoline. However, both men agreed that the fire was of an incendiary origin with a flammable liquid used as accelerant. (N.T. 4.100; 7.95).

erred in refusing to instruct the jury that where evidence presented is equally capable of two inferences, guilt or innocence, the jury must adopt the conclusion consistent with innocence; and (6) whether the trial court erred in instructing the jury that a defendant charged with a catastrophe and recklessly endangering other persons need not intend the danger he creates.

Appellant contends that references by the District Attorney, in his cross-examination of appellant and in his closing argument, constitute reversible error warranting the grant of a new trial. We agree.

The law is clear that questions or comments by a prosecutor concerning a defendant's post-arrest silence constitute a clear violation of the defendant's Fifth Amendment right to remain silent. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976). In addition, the court in *Commonwealth v. Williams,* 296 Pa.Super. 97, 100, 442 A.2d 314, 316 (1982) held: "An accused's Fifth Amendment right to remain silent is unequivocal. Any mention of the fact that a defendant availed himself of that protection must be scrupulously avoided."

The United States Supreme Court established the constitutional permissibility of references at trial to post-arrest silence where the silence in question occurred prior to the giving of *Miranda* warning. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 1310, 1312, 71 L.Ed.2d 490 (1982). However, the Pennsylvania Supreme Court, acknowledging that their position is more restrictive than that taken by the United States Supreme Court in *Fletcher v. Weir, id.,* declined to hold, under the Pennsylvania Constitution, that the existence of *Miranda* warnings, or their absence, affects a person's legitimate expectation not to be penalized for exercising the right to remain silent. *Commonwealth v. Turner,* 499 Pa. 579, 584, 454 A.2d 537, 540 (1982).

In *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976) our Supreme Court declared:

The law is clear. It is reversible error to admit evidence of a defendant's silence at the time of his arrest.

*Commonwealth v. Stafford,* 450 Pa. 252, 299 A.2d 590 (1973); *Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972). The prohibition of any reference to an accused's silence reflects the court's desire that an accused not be penalized for exercising his constitutional rights. *Commonwealth v. Stafford, supra; Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is a recognition that most lay persons would view an assertion of the constitutional privilege as an admission of guilt. *Commonwealth v. Haideman,* 449 Pa. at 371, 296 A.2d at 767, citing *Walker v. United States,* 404 F.2d 900, 903 (5th Cir.1968). *Id.* 465 Pa. at 403–04, 350 A.2d at 828.

However, neither the Supreme Court nor the Superior Court has failed to recognize that, in certain circumstances, curative measures can eradicate possible prejudice. In *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976), Justice Eagen, after reviewing conflicting Pennsylvania authorities, wrote for a plurality of the Court:

In order that there will be no confusion henceforth, we now specifically rule that in Pennsylvania adequate instructions under some circumstances may cure error of the nature here complained of. Initially, whether the harm can be removed by curative instructions will be within the sound discretion of the trial judge and his determination will be subject to appellate review. In making this decision, the following will be important considerations but not necessarily exclusive: (1) the nature of the reference, particularly, whether it was a specific comment on the accused's silence at trial or at the time of arrest or whether it was, as in *Commonwealth v. Ross* [403 Pa. 358, 169 A.2d 780 (1961)], merely a reference to the fact that incriminating evidence of the Commonwealth was undenied or uncontradicted; and (2) whether the accused's silence was exploited by the district attorney. *Id.* 469 Pa. at 349, 365 A.2d at 1241.

In the instant case, appellant took the stand in his own defense and testified that he did not set the fire. Rather, he had remained in the building to fix the conveyor belts on

his machinery and to take care of the flooding in the basement and, after making the necessary repairs, had taken a nap on the third floor of the premises. Later, after leaving the building and the area, he was arrested by police on charges of setting fire to the building.

On cross-examination, the District Attorney asked the following questions:

Q. After they told you to put your hands up they then handcuffed you did they not?

A. Yes, behind my back.

Q. An[d] put you in the police car?

A. Yes.

Q. An[d] took you away?

A. Yes.

Q. Didn't you wonder why?

A. I didn't know why.

Q. *Did you ask?*

A. I didn't ask.

Q. Officer Massaro was there, your friend?

A. He wasn't there when they was arresting me.

Q. But he came up and saw what was going on?

A. No, I moved away about seven or eight or ten or twelve doors away when I make the right turn there.

Q. *An[d] you did not ask why you were being arrested?*

A. No.

Q. If you did not know the building was burning can you tell us whether you heard the young lady shout stop that car. Did you hear that?

A. No, I didn't hear that.

Q. That had nothing to do with you?

A. I didn't hear that.

Q. *Mr. Redel, isn't it true that you knew why they were locking you up. You knew didn't you, sir?*

A. What's that?

Q. *You knew why they were locking you up so therefore you didn't have to ask?*

A. I didn't know it.

Q. Did you call your lawyer?

MR. SLOMSKY: *May we see you at side bar.*

THE COURT: No, not yet.

(N.T. 8.121–8.122)

Later, in his closing argument, the District Attorney again remarked that appellant had remained silent during his arrest and asked the jury to infer from that silence that appellant knew why he was being arrested, i.e., he was guilty:

Now when Mr. Slomsky was talking to you he said that isn't it strange that Mr. Redel didn't complain about being arrested. That is not what I asked him. I didn't say anything about complaints, *I said why didn't you ask and Ladies and Gentlemen of the jury, I urge you to believe that he already knew why he was being arrested. He knew more than anyone else knew. He knew the building was burning and he knew that he had been caught with the evidence red-handed.*

(N.T. 9.106)

The District Attorney's questions and remarks concerning the appellant's post-arrest silence are nothing but blatant violations of appellant's Fifth Amendment right to remain silent. The record reveals no testimony or other circumstances to justify the need for even one such prejudicial question or remark, let alone a number of them. Through his questions and remarks, the District Attorney clearly attempted to reinforce the issue of appellant's post-arrest silence on the minds of the jury and to lead the jurors to believe that the appellant's silence was an admission of his guilt. Thus, this is a distinct case of exploitation of appellant's silence by the District Attorney.

In the instant case, we reject the argument offered by the Commonwealth in its brief that in the context of the record, recounted in great detail, "there is no reasonable possibility that a few brief and passing references to defendant's post-arrest silence in a two-week trial could have contributed to the verdict, and any possible error in this

regard must be considered *de minimus.*" Such error is "harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story,* 476 Pa. 391, 405, 383 A.2d 155, 162 (1978). Unless the court determines that the error could not have contributed to the verdict, the "reasonable possibility" that the error did contribute to the verdict negates any notion of harmlessness. *Id.,* 476 Pa. at 408–409, 383 A.2d at 164.

The jury may have decided that the Commonwealth's case was significantly bolstered by the references to appellant's post-arrest silence. Jury verdicts are arrived at after many objective and subjective considerations, and they do not always conform perfectly to the instructions given by the court. *Turner,* 499 Pa. at 585, 454 A.2d at 540. To attempt to draw such conclusions is to speculate.

The District Attorney's questions and closing remarks concerning appellant's post-arrest silence were direct inferences of appellant's guilt. The appellant was not permitted to mitigate the resulting prejudice by explaining why he remained silent. His explanation involved his Holocaust experience, and Judge Abraham refused to permit such testimony since she believed it to be irrelevant and might envoke the prejudice or sympathy of the jury.[2]

In addition, the jury sent a note to the judge asking whether they could recommend leniency. Judge Abraham answered in the negative but also told the jury that she would be glad to consider the request as a recommendation at the time of sentence and would note it on the record. (N.T. 10.30–10.31)

---

2. Appellant's trial counsel requested the court to permit appellant to testify that appellant was in this shaken state because he was a Holocaust survivor, and when the officers converged upon him with flashing lights and handcuffs, appellant had a flashback to the time of his arrest in Poland by the gestapo, which caused him to be in a state of shock. (N.T. 4.3)

Appellant also sought to introduce the fact of his Holocaust experience to explain his presence at the fire at such an unusual hour. In essence, appellant would have testified that he worked long hours to keep his mind from focusing on the Holocaust. Appellant's counsel informed the trial court that appellant would not elaborate on the details of his Holocaust experience, but would only assert the fact of its existence as the reason behind his behavior. (N.T. 4.3–4.8)

Thus, no sound conclusions can be drawn from the verdict about "what the jury believed" concerning appellant's credibility. It would be pure speculation for us to assume that the jury would have resolved the case in the same manner absent the references to appellant's post-arrest silence. Thus, we are not convinced beyond a reasonable doubt the references to appellant's post-arrest silence did not contribute to the verdict.

■ It is well-settled that defendant's failure to object to allegedly improper testimony at the proper stage in the questioning of the witness constitutes a waiver. *Commonwealth v. Berrios,* 495 Pa. 444, 453–454, 434 A.2d 1173, 1179 (1981). In the case at bar, the trial court in its Opinion and the Commonwealth contend that appellant's trial counsel did not object to the questions and comments concerning appellant's post-verdict silence at the proper stages and, thus, waived the issue.

Appellant's appellate counsel contends and the record shows that immediately after the District Attorney had questioned appellant about his post-arrest silence, appellant's trial counsel interrupted the cross-examination and asked to see the court at sidebar. (N.T. 8.122) The court refused. (N.T. 8.122) After re-direct examination, appellant's trial counsel again approached the bar and specifically objected to the prosecutor's questions on the ground that they violated appellant's constitutional right to remain silent. (N.T. 8.131) Appellant's counsel also asked the court at this point to reverse its earlier ruling precluding testimony about appellant's Holocaust experience to explain why appellant was frightened and said nothing to arresting officers since the District Attorney opened the door with his improper questions. Trial counsel considered it a "catch-22" situation since the District Attorney was permitted to ask appellant why he did not ask police why he was being arrested, but the appellant was precluded by the court's prior ruling from giving his answer. (N.T. 8.128–8.133) The objections were noted for the record and overruled. (N.T. 8.133)

Also, prior to the District Attorney's closing argument, appellant's counsel requested the trial court to instruct the District Attorney not to argue appellant's silence to the jury. The request was denied since the court refused to proscribe either lawyer's closing argument in anticipation of what the other might say. At sidebar, the court told appellant's counsel that he could object to improper prosecutorial comment if and when any such comment was made. (N.T. 9.7–9.8) Counsel did not object when the actual comment was made.

■ After careful review of the record, we believe that appellant's counsel did object at trial to questions and comments concerning appellant's post-arrest silence and properly preserved the issue for review. Even though counsel did not specifically object to the District Attorney's actual comment during his closing argument or after, we believe that his prior request put the court on notice that the remarks were prejudicial and gave the court an opportunity to either preclude such comment or attempt to correct the damage once it occurred. All testimony and opening and closing statements were recorded, and, thus, there is no dispute as to the content of the remarks. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253, 256 (1977). *Commonwealth v. Adkins*, 468 Pa. 465, 364 A.2d 287, 290 (1976).

Curative instructions were neither requested nor given. However, in this case, there were specific questions and comments by the District Attorney on the accused's silence at the time of arrest. The accused's silence was definitely exploited by the District Attorney during cross-examination of the appellant and during his closing argument. Thus, in the context of this case, we find that a curative instruction would not have negated the inferences of guilt surrounding the appellant's post-arrest silence.

■ In our view, however, this type of prosecutorial misconduct, although erroneous, does not require the extreme sanction of barring retrial of appellant. The test to be applied is whether the Commonwealth engaged in either intentional or bad faith "overreaching." *Commonwealth v.*

*Starks,* 490 Pa. 336, 416 A.2d 498, 500 (1980). The United States Supreme Court has enunciated two types of prosecutorial overreaching. First, there is prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. Second, there is prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 1081–1082, 47 L.Ed.2d 267 (1976).

■ Although the instances of misconduct in this case cannot be condoned, and clearly require reversal of the appellant's convictions, they do not constitute overreaching. After reviewing the record, we conclude that the District Attorney's remarks had some basis in trial strategy and cannot be considered an attempt to provoke a mistrial or a bad faith attempt to prejudice or harass the appellant.

In view of our disposition of this issue, we do not need to address the remaining questions raised in this appeal.

Accordingly, the judgment of sentence of the Court of Common Pleas is vacated, and the case is remanded for a new trial.

Jurisdiction is relinquished.