338 S.E.2d 360

**STATE of West Virginia**

v.

**James M. OXIER.**

No. 16606.

Supreme Court of Appeals of
West Virginia.

Dec. 12, 1985.

Charlie Brown, Bethany R. Boyd, Asst.
Atty. Gen., Charleston, for the State.

Hugh Rogers, Jr., Kerens, for defendant.

MILLER, Chief Justice:

James Oxier was convicted by a jury in
the Circuit Court of Randolph County of
breaking and entering. In his appeal, he
claims the State improperly cross-examined
him about his pretrial silence. A second
assigned error relates to the State's reason-
able doubt instruction. The final assign-
ment of error, which is entwined with the
preceding errors, deals with the prosecut-
ing attorney's comments in closing argu-
ment about the defendant's pretrial silence
and the State's reasonable doubt instruc-
tion.

In the early morning hours of December
13, 1983, several persons were involved in
the breaking and entering of a country
store located in Job, West Virginia. The
storekeeper and other members of his fami-
ly were alerted to the crime when the
store's alarm sounded in the storekeeper's
home. They armed themselves and pro-
ceeded to the store. When they arrived at
the store, they observed at least three indi-
viduals inside. As the storekeeper ap-
proached the store, someone from inside
fired a shot at him. In the ensuing shoot-
out, the defendant was severely wounded
in his right leg. After the shooting ceased,
the defendant and the other intruders es-
caped without being identified.

Subsequently, the defendant managed to
walk to the home of a Nellie White, some
four hundred yards from the store. He

knew Ms. White because she was his girl-friend's grandmother. Ms. White's neighbor, a DeWitt Warner, came over to her home and the State police and an emergency vehicle were called for the defendant. The defendant told Mr. Warner that he had been with some friends who tried to break into a store and when he tried to stop them, he was shot.

When the State police arrived at Ms. White's home, Corporal Gary White asked the defendant what had happened and he said, "I got shot." The defendant was not formally arrested until after he was discharged from the hospital. Corporal White, who made the arrest, stated at that time the defendant was advised of his constitutional rights and he declined to make a statement.

At trial, the defendant presented an alibi defense and claimed he was not involved in the breaking and entering. In his cross-examination of the defendant, the prosecutor asked why he did not tell the police officers on the night of the crime the exculpatory story he had related on direct examination. This question was objected to by defense counsel but overruled by the trial court. In his closing argument, the prosecutor dwelled at some length on the defendant's failure to disclose his exculpatory story to the police either when they talked to him in Ms. White's home or soon after his arrest.

The impeachment of a defendant through his pretrial silence was first discussed in *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), which was based on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). We held in Syllabus Point 1 of *Boyd:*

"Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury."

The State argues that *Doyle* has been modified by later United States Supreme Court cases, particularly *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), where the Supreme Court in a per curiam opinion held that the prosecutor's cross-examination of the defendant's post-arrest silence did not violate *Doyle* because there were no *Miranda* warnings given. *Fletcher* was preceded by *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), where the Supreme Court concluded the prearrest silence of the defendant could be the subject of cross-examination.[1]

In this case, we are presented with both a prearrest noncustodial silence at the home of Ms. White where the defendant only stated "I got shot" and a second silence after his arrest and *Miranda* warnings were given, which occurred after he had been discharged from the hospital. It is this latter situation that falls squarely within the *Doyle-Boyd* rationale precluding exploitation of pretrial silence after receipt of *Miranda* warnings.

Although the prosecutor did not cross-examine the defendant with regard to the defendant's silence after his arrest on being discharged from the hospital, he did dwell on it in his closing argument.[2] We

---

**1.** The United States Supreme Court reasoned in *Jenkins*, 447 U.S. at 240, 100 S.Ct. at 2130 65 L.Ed.2d at 96:

"In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment."

In *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (per curiam), the Supreme Court held that *Doyle* did not prevent a defendant from being cross-examined at trial on inconsistencies between his direct testimony and earlier statements given to a police officer, a point we made in Syllabus Point 2 of *Boyd*.

**2.** The prosecutor's, defense attorney's, and court's remarks were as follows:

"[PROSECUTOR:] ... We put Trooper White back on the stand.... He confronted Oxier and Oxier said he was shot. He didn't

stated in Syllabus Point 3 of *Boyd* that "it is reversible error for the prosecutor ... to comment on the [pretrial silence of a defendant] to the jury." A number of courts have held that the *Doyle* rationale will apply where the prosecutor draws the jury's attention to the defendant's pretrial silence in his closing argument. *E.g., United States v. Massey*, 687 F.2d 1348 (10th Cir. 1982); *Dorman v. State*, 622 P.2d 448 (Alaska 1981); *State v. Domingue*, 470 So.2d 1013 (La.Ct.App.), *appeal denied*, 477 So.2d 97 (1985); *Commonwealth v. Mahdi.*, 388 Mass. 679, 448 N.E.2d 704 (1983); *State v. Lyle*, 73 N.J. 403, 375 A.2d 629 (1977) (per curiam); *State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984); *Commonwealth v. Redel*, 335 Pa.Super. 354, 484 A.2d 171 (1984).

We touched on this issue in *State v. Mullins*, 171 W.Va. 542, 301 S.E.2d 173 (1982) (per curiam), where the prosecutor's remark came in response to a comment made by the defense attorney in closing argument to the effect that since the defendant did not appear at the grand jury, the trial was the first opportunity she had to tell her side of the story. The prosecutor's rejoinder was that she was asked the night of the crime for her side of the story and

she "didn't tell the EMT's or the police." 171 W.Va. at 546, 301 S.E.2d at 177. We concluded the remark was simply a generalized comment in response to the defendant's statement in the same area and was not error.

In the present case, it cannot be said that the prosecutor was making a general statement in response to the defense attorney's argument in the same area. Here, the prosecutor initiated the argument and proceeded to develop it in considerable detail, emphasizing to the jury that the defendant's failure to disclose his alibi prior to trial meant it was a lie. Consequently, we conclude the prosecutor committed reversible error.

The State argues there was a lack of precision in defense counsel's objection because it was based on relevancy rather than on a constitutional ground, i.e., the right against self-incrimination. We are cited several cases which the State contends hold that if an error of constitutional magnitude is not raised at trial, it is waived. *E.g., State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983); *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982); *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979); *State v. Carroll*, 150

tell him about the breaking and entry or this concocted story that he had time to come up here and figure out. He has to have some sort of an alibi to tell you all, but nothing was said right after the initial crime scene, and if you're innocent of a case, ladies and gentlemen, and you're just walking by and all of a sudden somebody shoots you ... you're going to get in there yelling to the police and say, hey, I've been shot, I've been innocently victimized in this particular case. I tried to stop a breaking and entry and they shot me. He said nothing. He said he was shot because he hadn't had time at that particular point to figure out his alibi and that's exactly the truth. Later on when he got out of the hospital he still had time to think about his alibi. Trooper White then confronted him. He didn't give him his Miranda warnings.... He didn't do that at the scene because the man was in shock.... Okay, when he got out of the hospital he gave him his full Miranda rights and that's the formal interrogation by a State Police officer, and what did Mr. Oxier tell you at that particular time? He said nothing, absolutely nothing, because he hadn't had time to figure up—he had to have some alibi—

"[DEFENSE ATTORNEY]: Your Honor, I'm going to object to this argument as to his inability to give a statement. I don't believe it's a proper argument.

"THE COURT: Why isn't it a proper argument? You can argue why he couldn't. Go ahead....

"[PROSECUTOR]: He said absolutely nothing because he hadn't come up with this alibi, this story that he wants you to believe.

\*　　\*　　\*　　\*　　\*　　\*

"... He's trying to think of an alibi all the time. If he's totally innocent—those of them that are innocent, it has been my experience that if you're innocent and somebody comes up and says hey, look, you're involved in a crime, you're going to say absolutely not, you're going to yell and shout your innocence. When someone comes up and give[s] you the Miranda Warning, you're going to say get out of here, trooper, I had nothing to do with it. He said nothing. He's gotten with his lawyers, he's given them a story, the lawyers have come to you and they've tried to sell it to you."

W.Va. 765, 149 S.E.2d 309 (1966). We do not find this rule expressed in these cases.

Furthermore, these cases are distinguishable from the present case where an objection was made. In *Williams,* the issue was whether the jurors had seen a prejudicial newspaper article. We did not consider this error because the defense attorney made no showing at the trial that any of the jurors had actually seen the article. Much the same problem existed in *Buck* where we found there was a lack of a factual predicate in the record to address the line-up issue. In *Brewster,* even though there was no objection to the late production of exculpatory evidence, we still addressed the issue by noting that the claimed exculpatory evidence was not connected to any relevant issue and, consequently, there was no reversible error. The issue in *Carroll* was that the defendant had not filed a formal plea of double jeopardy which was required under the then existing pleading rules.

Finally, we believe the State's reliance on *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982), is misplaced. It is true that in the course of that opinion, we pointed out that a specific objection had not been made. However, we proceeded to analyze the alleged error anyway and found the defendant had voluntarily testified in an administrative hearing with the full realization that his statements could be used against him.

More germane to the present case involving as it does an error of constitutional dimension is Syllabus Point 4 of *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975): "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution."

The facts in *Starr* were far less egregious than here and resulted in a reversal. In *Starr,* the issue was the prosecutor's statement in his closing argument that the

State did not have to prove the defendant knowingly aided and abetted the robbery. This comment was made in response to defense counsel's remarks that the State had failed to prove that the defendant knowingly aided and abetted a robbery.

The Alaska and New Jersey Supreme Courts in *Dorman* and *Lyle* had the issue that the defense attorney did not object to the prosecutor's comments regarding the defendants' pretrial silences. Both courts had no difficulty in holding that the matter could be reached under the plain error doctrine. In view of the foregoing, we believe the *Doyle-Boyd* principle is properly before us. As we have previously noted, we find the prosecutor committed error in regard to it.

In view of the fact that this case is reversed and remanded for a new trial, we decline to give an extended discussion on the defendant's claim of an erroneous reasonable doubt instruction. The instruction utilized the phrase "abiding conviction of the truth of the charge contained in the indictment" in defining proof beyond a reasonable doubt. We commented on this instruction in *State v. Beckett,* 172 W.Va. 817, 824, 310 S.E.2d 883, 891 (1983), saying that it "probably confuses rather than helps the jury." However, we declined in *Beckett* to find it was reversible error to give the instruction because other traditional reasonable doubt instructions had been given on behalf of the defendant, citing *State v. Patton,* 171 W.Va. 419, 422, 299 S.E.2d 31, 34 (1982) (per curiam). In the present case, the jury was also given the recommended reasonable doubt instruction as set out in note 9 of *State v. Goff,* 166 W.Va. 47, 272 S.E.2d 457, 463 (1980).

Of more concern on retrial is that there should not be a repetition of the prosecutor's closing statements to the jury about the law applicable to this case and particularly the reasonable doubt standard. He began his closing argument by advising the jury that although he had been a prosecutor for some twenty years, he felt that instructions were confusing and suggested they use common sense.[3] He then proceed-

---

**3.** "[PROSECUTOR]: Now you know all about

the criminal law. I'll tell you, I've been

ed to focus on the concept of proof beyond a reasonable doubt, which he suggested was like an intuition or a gut reaction.[4] The prosecutor concluded with an admonition to the jury not to be mealy-mouthed over the State's proof, but to follow their gut reactions.[5]

Here the prosecutor's remarks were directed at having the jury disregard one of the most fundamental concepts in the criminal law—the State must prove its case beyond a reasonable doubt. In *State v. Keffer*, 168 W.Va. 59, 281 S.E.2d 495 (1981), we reviewed three reasonable doubt instructions and found each of them fatally flawed. In addition to more traditional phraseology, these instructions contained the following objectionable phrases: "a man who entertains such doubt should be able to give a good and substantial reason," "though you also believe it possible she is not guilty, you should convict the defendant," and "[i]f ... you reach the conclusion that the defendant is guilty then it is your duty to so find."

■ The prosecutor's comments in the present case constituted clear misstatements of the reasonable doubt law, even more egregious than the misstatements made in *Keffer*. They were neither isolated nor fortuitous and can only be viewed as a calculated strategy to induce the jury to believe that the State's burden of proof as to the defendant's guilt was only a matter of a common sense view of the evidence or an intuitive or gut reaction to it. Such argument is highly prejudicial to the defendant and falls within Syllabus Point 1 of *Starr*:

"A prosecutor's misstatement of the law in closing argument, made after the trial court has properly charged the jury on the legal principles applicable to the case, does not constitute reversible error unless the accused is prejudiced."

As this case is reversed on other grounds, we need not determine whether the prosecutor's closing remarks constituted plain error because defense counsel failed to object to them.

For the foregoing reasons, the judgment of the Circuit Court of Randolph County is reversed and remanded.

Reversed and Remanded.

around criminal cases a long time and I have listened to instructions like you all have and I have been twenty years doing this particular job and they are confusing. So, don't feel badly if you're confused right now and don't know all those verbs and everything, reasonable doubt and everything. It's very confusing, it's very technical and I always sort of say to you that the best definition of this is this, you'll have to use some good common sense.

\* \* \* \* \* \*

"Some of the Court's instructions, as I told you before, it's awful, I've listened to them for years.... You're permitted to use your common sense to sort out all the verbage and all the lawyer talk and you tell us with your own common sense just what happened in this particular case."

4. "[PROSECUTOR:] ... If you followed the technical verbage and all that type of thing, reasonable doubt, maybe you would never get a conviction. Reasonable doubt is nothing more than this: If you're sitting there and you have a conviction, an abiding conviction, after you've heard all this malarky, if you're sitting down here and you think you know what happened and you have a good, I call it a gut reaction to it, and you think you know what happened that's what a reasonable doubt is and then you're satisfied beyond a reasonable doubt. You can't define it, it's an elusive term, it's incapable of description. But if you're down here (indicating) and you know that you have a feeling, intuition, women's intuition, men's intuition, you know that you're right and you've got good solid judgment on it I submit that you are right. So, if you're down here (indicating) and you decide this case—sometimes you're better to rule with your heart than your mind and I submit that that's correct. If you're down here (indicating) and, you know, you just can't shake this then you are satisfied beyond a reasonable doubt."

5. His remarks in this regard were:

"We don't want any mealy-mouthed verdicts from any jury saying oh, no, he's not guilty and they didn't prove this and they didn't prove that. If you have a gut reaction in your heart right now, on behalf of the citizens of the State of West Virginia I ask that you find this defendant guilty."