355 S.E.2d 400

**STATE of West Virginia**

v.

**James Irvin HAMILTON.**

**No. 16976.**

Supreme Court of Appeals of West Virginia.

March 19, 1987.

---

William G. Mercer, Parkersburg, for appellant.

Harry Deitzler, Pros. Atty., Parkersburg, for appellee.

PER CURIAM:

The defendant, James Irvin Hamilton, appeals his conviction in the Circuit Court of Wood County of the offense of breaking and entering. The defendant's primary error is the claim that he was impeached by his post-arrest silence in violation of *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985). We disagree and we affirm the judgment of the circuit court.

The State's chief witness, a Mr. Griffith, testified that on June 23, 1984, at about 4:15 a.m., he saw the defendant and another individual utilize a knife to open the door of a night club known as Blondie's Lounge located in Parkersburg. They then left the area, drove around the block, and then stopped and proceeded inside the lounge. Mr. Griffith stated he called the police and did not see anyone else go into the lounge.

Officer T.A. Dent of the Parkersburg Police Department testified that the same date, he received a call to go to Blondie's Lounge. When he arrived at the lounge, he saw the defendant in a group of people standing on the sidewalk in the general area of the lounge. When Officer Dent entered the lounge, he observed a tool in the area of a metal coin box. He also noted a video machine had been broken into

and that a cigarette machine was turned around. Officer Dent observed two screwdrivers near the lounge's jukebox and a small caliber handgun.

Thelma Bonnett, an employee of the lounge, testified she saw the defendant and codefendant, Dale Sams, in the lounge by the jukebox early that evening. At the time she left the lounge, the defendant and codefendant had already left, stating they would meet her later. While she was in another restaurant, a police officer approached her and asked her to return to the lounge. When she arrived there, she observed the defendant walking out of the lounge, followed by the codefendant, Sams. She testified she never gave consent to the defendant or the codefendant to enter the lounge after hours.

Sharon Cunningham, the owner of the lounge, testified she gave no permission to anyone on June 23, 1984, to enter the premises after it had closed. She stated the defendant had been employed at the lounge prior to the breaking and entering. While he was employed there, part of his duties included closing the club and putting on the alarm system. He sometimes carried a metal box of money out of the establishment.

Jerry R. Harvey, a Parkersburg police officer, responded to a call to go to the lounge on June 23, 1984, at about 4:15 a.m. Upon arriving at the scene, Officer Harvey spoke with Mr. Griffith and then checked the doors of the lounge to determine if they were all secure. After finding that the doors were secure, he kept the entrances under surveillance until other police officers arrived. Officer Harvey stated that after watching the entrances for some period of time, one of the doors opened and two individuals came out of the lounge, one of whom was the defendant. Officer Harvey testified that upon entering the lounge, he observed the doors to the coin boxes of several video machines had been pried open. Much of Officer Harvey's testimony was corroborated by a fellow officer, Joe Kuhl.

Officer George Montgomery also corroborated Officer Harvey's testimony and stat-

ed he placed the defendant in his police cruiser and read to him his *Miranda* warnings. Officer Montgomery testified the defendant made no statement. A search of the codefendant, Sams, revealed that he had sixty-nine quarters or a total of $17.25 on his person, along with a dime and some other small change.[1] A search of the defendant revealed that he had $5.92 on him, which included currency and some change.

The defendant testified in his own behalf and stated that he had been employed at the lounge for a three-week period about one and one-half years before the trial. The defendant stated that during the early morning of June 23, 1984, he had been to various night clubs in the Parkersburg area and had consumed several drinks. He said he approached the lounge for a second time believing that it might still be open since when he had worked there, it would sometimes stay open until 5:00 or 6:00 o'clock in the morning. The defendant's testimony was that he opened the door and walked into the lounge without any kind of forcible entry and left after a few minutes when he realized it was closed. According to the defendant, his friend, the codefendant, was with him, but neither of them damaged nor took any property from the lounge.

The defendant argues that error was committed when Officer Montgomery testified that the defendant gave no statement after he was given his *Miranda* warnings. In a related vein, the defendant argues that error was committed during closing argument when the prosecutor commented on the defendant's post-arrest silence.[2]

■ The impeachment of a defendant by questioning him on his pretrial silence after being given his *Miranda* warnings was initially discussed in *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), where we relied upon *Doyle v. Ohio*, 426 U.S. 610, 96

S.Ct. 2240, 49 L.Ed.2d 91 (1976), and stated in Syllabus Point 1:

"Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury."

*See also* Syllabus Point 1, *State v. Oxier, supra.*

■ In this case, we are presented with a comment from a police officer to the effect that after the defendant's arrest and *Miranda* warnings had been given, he made no statement. There was no attempt by the prosecutor to cross-examine the defendant with regard to his post-arrest silence. Officer Montgomery's response of "no" to the question, "After you read the *Miranda* warnings to him, did he say anything to you," cannot be deemed as an attempt to impeach the defendant over his pretrial silence. In both *Boyd* and *Oxier*, the prosecutor did impeach the defendant by questioning him at some length about the fact that he never disclosed his in-courtroom alibi story to the police after his arrest and *Miranda* warnings. The defendant was asked why he had not given his alibi story at the time of his arrest.

The question asked was not aimed at having the witness make some comment about the defendant's failure to give his story or alibi at the time he was arrested. Its prejudicial effect was minimal and much less than the isolated comment made by the prosecutor in *State v. Mullins*, 171 W.Va. 542, 301 S.E.2d 173 (1982). There, the defense had commented in closing argument that the trial was the first opportunity for the defendant to tell her side of the story. The prosecutor in his closing argu-

---

**1.** There was testimony that the coin boxes on several video machines were empty and that these machines utilized a quarter to operate them.

**2.** The prosecutor's remarks during his rebuttal closing were that, "If you want to believe that he

[the defendant] didn't know the police were there, he had to make that story up between the time he got there and the time that he got questioned, which would be—he never told anything, but he had to make up the story from then."

ment rejoined that she was asked on the night of the crime and she "didn't tell the EMT's or the police." We concluded that this generalized comment in response to the earlier defense statement did not constitute reversible error. We reach the same conclusion here.

■ We also find no reversible error in the prosecutor's remarks which were apparently directed at arguing that the defendant needed some time to prepare his story after he was caught.[3] These remarks were not designed to comment on the defendant's pretrial silence. In fact, the comments were sufficiently abstract that it is doubtful that a jury would derive any adverse meaning from them.

The defendant's third assignment of error relates to the trial court's refusal to give the Defendant's Instruction No. 3, which dealt with intent, and No. 4, which stated that his presence at the scene was not sufficient to make him guilty of a crime.[4]

■ State's Instruction No. 1 advised the jury with regard to the crime of breaking and entering and the elements which the State needed to prove beyond a reasonable doubt. It specifically included as an element the phrase "with the intent to commit a larceny therein."[5] Consequently, we find that the trial court was correct under Syllabus Point 6 of *State v. Thompson,* 176 W.Va. 300, 342 S.E.2d 268 (1986), in rejecting defendant's Instruction No. 3:

> " ' "It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court." Syl. pt. 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966).' Syllabus point 3, *State v. Evans,* 172 W.Va. 810, 310 S.E.2d 877 (1983)."

**3.** *See* note 2, *supra.*

**4.** Defendant's Instruction No. 3 stated as follows: "The intent necessary to convict the defendant, JAMES ERVIN HAMILTON, is that there was an intent to commit a larceny when he broke and entered, or entered without breaking into Blondie's Lounge." Defendant's Instruction No. 4 stated: "The Defendants [sic] mere presence at the scene of a crime is not enough to make him guilty of a crime. The

■ We believe defendant's Instruction No. 4 was misleading and incomplete under the evidence. Defendant's presence inside the premises could not plausibly be construed as an innocent act such that he could be deemed a bystander who was present while a crime was committed. Furthermore, the instruction is incomplete as presence may be sufficient if the person is acting as a lookout. We have consistently followed the principle stated in Syllabus Point 2 of *State v. Saunders,* 175 W.Va. 16, 330 S.E.2d 674 (1985):

> " 'Instructions in a criminal case which are confusing, misleading or incorrectly state the law should not be given.' Syllabus Point 3, *State v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631 (1978)."

■ Finally, the defendant objects to the evidence that his codefendant had sixty-nine quarters in his pocket at the time he was arrested. This evidence circumstantially supported the State's case that this money came from the video machines. We do not believe that this assignment has merit for the simple reason that there is no initial showing that the search of the codefendant was illegal. The search was made incident to a valid arrest and consequently there was no requirement for a warrant. In Syllabus Point 6 of *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), we held that a warrantless search of the person could be conducted as an incident to a valid arrest:

> "A warrantless search of the person and the immediate geographic area under his physical control is authorized as an incident to a valid arrest."

*See also* Syllabus Point 5, *State v. Cook,* 175 W.Va. 185, 332 S.E.2d 147 (1985).

Defendant must have participated in the commission of the crime to be guilty of the crime."

**5.** We recognize that W.Va.Code, 61–3–12, defines breaking and entering "with intent to commit a felony or any larceny." Obviously, the facts of this case were predicated only on the intent to commit a larceny and, therefore, the words "a felony" were properly dropped.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.