J-S25007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN LAWRENCE AUSTIN, II, | |
| Appellant | No. 770 WDA 2014 |

Appeal from the Judgment of Sentence Entered February 28, 2014
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000125-2013

BEFORE:  BENDER, P.J.E., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 03, 2015**

Appellant, Kevin Lawrence Austin II, appeals from the judgment of sentence of 14-28 years' incarceration following his conviction for multiple crimes associated with a Clarion County drive-by shooting that resulted in serious injury to one of the victims.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

> On the evening of February 2, 2013, Appellant and several friends attended a party at an apartment in Clarion, Pa.  During that party, a fight broke out between members of Appellant's group and other partygoers.  One of [] Appellant's friends— Malcolm Hailstock—brandished a gun he had brought to the party.  This prompted the party to break up, and [A]ppellant and his friends left in their automobile.
>
> Shortly thereafter, while other guests were still milling about and dispersing, Appellant and his friends returned to the

_____

[*] Retired Senior Judge assigned to the Superior Court.

scene of the party. As their gray SUV cruised slowly past the partygoers, an arm peeked out of the window on the driver's side in the second row of seats. Six shots were fired. Five embedded themselves harmlessly near the pavement. One struck Rakeeah Merritt in the leg, severely injuring her.

Over the course of the next several weeks, police officers managed to find and interview each of the men who had been in the car with Appellant. During initial interviews their stories diverged radically. Several claimed that neither they nor Appellant had been at the party, others said they were simply too intoxicated to recall what had occurred. Eventually, however, each of the men conceded that Appellant had been in the car, and seated on the driver's side in the second row of seats—the position from which the shots had been fired. Some of the men admitted they had actually seen Appellant fire the shots.

Trial Court Opinion (TCO), 9/8/14, at 1-2.

Following a three-day trial on December 9-11, 2013, a jury convicted Appellant of two counts of aggravated assault, 18 Pa.C.S. § 2702(a)(1) and (a)(4); four counts of recklessly endangering another person, 18 Pa.C.S. § 2705; simple assault, 18 Pa.C.S. § 2701(a)(2); carrying a firearm without a license, 18 Pa.C.S. § 6106; and person not to possess a firearm, 18 Pa.C.S. § 6105.[1] On February 26, 2014, the trial court sentenced Appellant to an aggregate term of 14-28 years' incarceration. Appellant filed post-sentence motions on March 11, 2014, which were denied on April 11, 2014. Appellant then filed a timely notice of appeal on May 9, 2014. Pursuant to the trial court's order, Appellant filed a Pa.R.A.P. 1925(b) concise statement of errors

_____

[1] Appellant's conviction for the offense of person not to possess a firearm was a result of a simultaneously held non-jury trial.

complained of on appeal (Concise Statement) on August 25, 2014. The trial court issued its Rule 1925(a) opinion on September 8, 2014.

Appellant now presents the following questions for our review:

I. Did the trial court err in admitting [a] statement of an unknown declarant as an excited utterance?

II. Did the trial court improperly define conviction under 42 Pa.C.S.A. [§] 2154(b)?

III. Did the trial court err in finding evidence sufficient to support a verdict for aggravated [assault] with a deadly weapon?

IV. Did the trial court err in holding that Malcolm Hailstock's motive for possessing a firearm was irrelevant?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant's first claim concerns the admission of a statement, through the testimony of Kenneth Moyer (the front-seat passenger in the vehicle at the time of the shooting), inculpating Appellant as the shooter. Moyer testified that after the shooting, he overheard someone in the vehicle ask, "Deuce, why Deuce, why?" N.T., 12/9/13, at 187. It had been previously established through the testimony of another witness that Appellant was known by the nickname, "Deuce." *Id.* at 153. Appellant complains that this statement was inadmissible hearsay not subject to any hearsay exception.

As a threshold matter, the Commonwealth contends that Appellant failed to preserve this claim for our review. We are constrained to agree. "It is well-settled that [a] defendant's failure to object to allegedly improper testimony at the proper stage in the questioning of the witness constitutes …

waiver." **_Commonwealth v. Redel_**, 484 A.2d 171, 175 (Pa. Super. 1984); **_see also_** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Appellant did not object to the contested testimony when it was elicited from witness Kenneth Moyer, nor was the objection raised in a pre-trial motion *in limine*.[2] Accordingly, Appellant has waived his first claim.

Appellant's second claim pertains to the calculation of his Prior Record Score (PRS), which, in turn, established the contours of the recommended sentencing guidelines for his offenses. Appellant inartfully articulates this claim in his statement of the question as court error in the application of 42 Pa.C.S. § 2154(b). Stated differently, the essence of Appellant's claim is this: whether the trial court erred when it determined that Appellant's prior guilty plea for a drug offense constituted a prior conviction for purposes of calculating his PRS. At the time Appellant committed the current offenses, he had already entered a guilty plea, but had yet to be sentenced pursuant

_____

[2] Appellant did raise an objection to the Commonwealth's attempt to elicit this same utterance from a different witness, Davonte Hyman. **_See_** N.T., 12/9/13, at 165. After a sidebar, the trial court overruled Appellant's hearsay objection, holding the statement admissible pursuant to the excited utterance exception to rule against hearsay. **_Id._** at 165-68. Nevertheless, Hyman did not testify as anticipated and, consequently, the statement was not admitted into evidence at that time. When the statement was later elicited from Kenneth Moyer, however, Appellant did not renew his objection. **_Id._** at 187.

to that plea. However, Appellant was sentenced for that drug offense before he was sentenced in this case.

Appellant's claim that his prior guilty plea for a drug offense did not constitute a prior conviction for purposes of calculating his PRS turns on the definition he gives to the term "convicted" as it appears in Section 2154(b). When reviewing a claim that raises an issue of statutory construction, our standard of review is plenary, and we adhere to the following:

> Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.
>
> Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following

presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Shiffler*, 879 A.2d 185, 189–190 (Pa. 2005) (citations omitted).

Section 2154(b) defines "Previously convicted of or adjudicated delinquent" as "[a]ny finding of guilt or adjudication of delinquency, whether or not sentence has been imposed or disposition ordered prior to the commission of the current offense." Calculation of a defendant's PRS is "based on the type and number of prior convictions (§ 303.5) and prior juvenile adjudications (§ 303.6)." 204 Pa. Code § 303.4(a). Section 303.5 provides as follows:

(a) If there is a single offense in the prior judicial proceeding, that offense shall be counted in the calculation of the Prior Record Score.

(b) If there are multiple offenses in the prior judicial proceeding:

(1) The most serious offense of the judicial proceeding shall be counted in the calculation of the Prior Record Score.

(2) Any offense for which a sentence of supervision or confinement is imposed consecutive to a sentence for another offense in the judicial proceeding shall be counted in the calculation of the Prior Record Score.

(c) *Un-sentenced convictions.* If no sentence has yet to be imposed on an offense, the offense shall not be counted in the calculation of the Prior Record Score.

(d) *Adequacy of the Prior Record Score.* The court may consider at sentencing prior convictions, juvenile adjudications or dispositions not counted in the calculation of the Prior Record Score, in addition to other factors deemed appropriate by the court.

204 Pa. Code § 303.5.

Appellant argues that a plea of guilty does not constitute a "conviction" for purposes of Section 2154(b), given a common understanding of the terms. Appellant concedes that the legislature has explicitly defined a conviction to include a plea of guilty in other contexts. *See*, *e.g.*, 75 Pa.C.S. 6501(a) ("For the purposes of this title a conviction includes a plea of guilty…."); 18 Pa.C.S. § 109 ("There is a conviction if the prosecution resulted in a … plea of guilty accepted by the court."); 18 Pa.C.S. § 6102 (defining "Conviction" for purposes of the Uniform Firearms Act as "[a] conviction, a finding of guilty or the entering of a plea of guilty or nolo contendere, whether or not judgment of sentence has been imposed, as determined by the law of the jurisdiction in which the prosecution was held."). Given these varying definitions, Appellant contends when the legislature intends a guilty plea to constitute a conviction, it explicitly states so. Thus, in the absence of specific language defining a conviction to include guilty pleas in Title 42 of Pennsylvania's Consolidated Statutes, or in the Title 204 of the Pennsylvania Code, Appellant asserts that convictions must be construed within those statutes to exclude guilty pleas. Appellant argues, therefore, that his guilty plea did not constitute a prior conviction for

purposes Section 2154(b) and, thus, that his prior felony drug offense should not have counted toward the calculation of his PRS.

Although Appellant presents a clever argument, it ultimately fails on its face because the plain meaning of the term "conviction" includes guilty pleas that have been accepted by a trial court. Black's defines a "conviction" as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." Black's Law Dictionary, 408 (10th ed. 2014). An accepted guilty plea is one of several judicial processes by which a defendant is found guilty of a crime. Black's definition of the root term makes this even more explicit, defining the verb "convict" as follows: "To prove or officially announce (a criminal defendant) to be guilty of a crime after proceedings in a law court; specif., to find (a person) guilty of a criminal offense upon a criminal trial, **a plea of guilty**, or a plea of nolo contendere (no contest)." **Id**. (emphasis added). Thus, there is no ambiguity in the legislature's use of the term "convicted" in Section 2154(b). The plain and unambiguous meaning of the term includes an accepted guilty plea.

Moreover, simply because the plain meaning of the term "conviction" has been articulated with more detail in different statutes does not mean that the plain meaning would not apply to 42 Pa.C.S. § 2154(b). Indeed, Section 2154(b) does not purport to redefine "conviction" for purposes of the sentencing guidelines, in contrast to the purportedly different definitions provided by Title 18 or Title 75. Instead, Section 2154(b) defines what the

temporal frame of reference is for previous or prior convictions. For purposes of the sentencing guidelines, an offense is counted as a previous conviction if the "finding of guilt" occurs "prior to the commission of the current offense." 42 Pa.C.S. § 2154(b). Thus, an offense is not considered a previous conviction under the sentencing guidelines if the related finding of guilt occurs after the commission of the current offense. Section 2154(b) does not, therefore, purport to define or otherwise modify the unambiguous, plain meaning of the term 'conviction.' It does serve to aid in the calculation of a PRS, however, because a 'prior conviction' is not merely an offense that is committed prior to the commission of the current offense. A finding of guilt on a prior offense must have occurred prior to the commission of the current offense in order to be included for consideration under the guidelines. 42 Pa.C.S. § 2154(b).

Section 2154(b) was satisfied in this case because Appellant entered, and a trial court had accepted, his guilty plea to the prior drug offense prior to his commission of the current offense(s). Because Appellant was sentenced for that prior offense prior to sentencing for the instant offense, 204 Pa. Code § 303.5 was also satisfied.[3] Accordingly, we ascertain no error in the trial court's calculation of Appellant's PRS.

_____

[3] The critical question under 204 Pa. Code § 303.5 is whether a defendant has been sentenced for an offense at a prior judicial proceeding prior to the calculation of the current PRS. Section 303.5(a) provided the general rule, explicitly including any offense from a prior judicial proceeding in the PRS
*(Footnote Continued Next Page)*

Appellant also claims that there was insufficient evidence to support his conviction for aggravated assault with a deadly weapon. Appellant contends that the evidence did not support a finding of intentional conduct and, at most, that his conduct was reckless.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

_____

*(Footnote Continued)* _____

calculation. Section 303.5(b) deals with a common situation where the prior judicial proceeding in question involved multiple offenses, and determines which of those offenses are used in the PRS calculation. This, in effect, also provides the first exception to the general rule, as not every offense from the same prior judicial proceeding will affect the calculation of a PRS. The second major exclusion from the calculation of a PRS is provided by Section 303.5(c), which excludes from PRS calculation any offense from a prior judicial hearing where sentencing did not yet occur. Finally, Section 303.5(d) provides that, despite a prior offense's exclusion from PRS calculation, "[t]he court may consider at sentencing prior convictions, juvenile adjudications or dispositions …." 204 Pa. Code 303.5(d).

A person commits the offense of aggravated assault with a deadly weapon if he or she "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S. § 2702(a)(4).

Appellant argues:

> The formation, distance, and location of the shots fired support a theory that Appellant's conduct was at most reckless. In total[,] six shots were fired from a .380 caliber firearm previously in the possession of Hailstock. Five of these six shots were fired into the ground and landed only several feet from the vehicle. These five shots came to rest in a centralized location when they entered the snowy ground. The formation, distance[,] and location of these impressions conclusively demonstrated that five of the six shots were fired at a downward angle away from the bystanders and into the ground.
>
> The sixth shot which struck the victim … was a result of reckless, unintentional[] conduct likely the result of a ricocheted projectile. [] Appellant's actions must have been accidental as there was no evidence presented that Appellant ever met the victim or had any motive to cause her injury.

Appellant's Brief, at 15. Essentially, Appellant contends that his theory—that the victim's injury was the result of an accidental shooting—was the *only* theory supported by the evidence.

Appellant did not raise this claim directly in his concise statement, as not one of Appellant's nine issues listed therein specifically set forth a sufficiency of the evidence claim. However, Appellant did raise in his concise statement a claim that the trial court erred in denying his motion for judgment of acquittal. Appellant's Concise Statement, 8/25/14, at 2 ¶ vi.

At the close of the Commonwealth's case, Appellant raised multiple claims regarding the sufficiency of the evidence in an omnibus, oral motion

for judgment of acquittal. N.T., 12/11/13, at 28-33. At that time, however, Appellant's trial counsel explicitly excluded from his motion for judgment of acquittal any sufficiency claim related to the aggravated assault with a deadly weapon charge as it applied to Rakeeah Merritt. *Id.* at 31 ("[A]t this point, I would concede Count 6 for this purpose and this purpose alone, that in a light viewed most favorably to the Commonwealth, that there is sufficient evidence for count 6, an aggravated assault (a)(4), causing bodily injury with a firearm."). Count 6 was the same offense for which Appellant now presents a sufficiency claim on appeal.

We are constrained to conclude, therefore, that Appellant has waived his third claim, as "[a]ny issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Appellant's claim that the trial court erred in denying his motion for judgment of acquittal did not preserve the sufficiency claim as it now appears in his brief because that sufficiency claim was explicitly excluded from his motion for judgment of acquittal.

Next, Appellant contends the trial court erred when it held that Malcolm Hailstock's motive for possessing a firearm was irrelevant. We review this claim under the following standard:

> The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion ... is abused."

*Commonwealth v. Murray*, 83 A.3d 137, 155-56 (Pa. 2013) (internal citations omitted).

At trial, Appellant attempted to portray Hailstock as the perpetrator of the shooting, which, in essence, was a claim that the occupants of the vehicle had conspired to frame him for Hailstock's misdeeds. Given this theory of the case, Appellant was permitted to "question Hailstock regarding any enmity between himself and the victims, his ownership and subsequent loss of the gun (which Appellant contended evinced a plan to cover up evidence of his own crime), and his inconsistent statements." TCO, at 6. However, during a second round of cross-examination, defense counsel asked Hailstock, "[w]hy did you find it necessary to carry a firearm knowing that you weren't allowed to?" N.T., 12/10/13, at 77. The Commonwealth objected on relevancy grounds. *Id.* Defense counsel argued that Hailstock's reason for bringing the firearm to the party was relevant because it would demonstrate premeditation by Hailstock to cause harm to someone at the party, fitting with Appellant's theory that Haistock had perpetrated the shooting. The trial court sustained the objection.

In its Rule 1925(a) opinion, the trial court reasoned that the evidence was inadmissible because its probative value was outweighed by its potential to cause undue prejudice or confuse the issues. See Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

- 13 -

presenting cumulative evidence."). Thus, the trial court agreed with Appellant that the evidence was relevant, but nevertheless found it inadmissible based on Rule 403. The trial court stated: "The court found that—having already inquired into Hailstock's means, motive, and opportunity to commit the crime—Appellant had no need to prove what specific offense Hailstock's acts might constitute." TCO, at 6-7.

We ascertain no abuse of discretion in the trial court's decision. We agree with the court that, after thoroughly cross-examining Hailstock, defense counsel's specific inquiry unduly risked confusing the jury as the stated purpose of his question was to establish Hailstock's premeditation, whereas defense counsel had already been afforded ample latitude to explore Hailstock's "means, motive, and opportunity to commit the crime[.]" *Id.* at 6. Accordingly, we conclude that Appellant's final claim lacks merit.

Judgment of sentence *affirmed*.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/3/2015

- 14 -