# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50415-4-II |
| Respondent, | |
| v. | |
| ROBERT DESHAWN GROTT, | UNPUBLISHED OPINION |
| | AFTER REMAND FROM THE |
| Appellant. | WASHINGTON SUPREME COURT |

WORSWICK, J. — Robert Grott appealed his convictions for second degree murder of Julian Thomas and seven counts of first degree assault.  In our first decision, *State v. Grott*, we held that Grott's convictions were supported by substantial evidence, but that the trial court erred by giving a first aggressor jury instruction.  No. 50415-4-II, slip op at 1 (Wash. Ct. App. March 5, 2019) (unpublished) https://www.courts.wa.gov/opinions/pdf/504154.pdf.  Our Supreme Court held that the trial court did not err by giving such an instruction and remanded to this court to consider Grott's remaining arguments.

We now hold that (1) the trial court did not err when it excluded the statement Grott made about the day of the incident to his testifying expert, Dr. Kevin Moore; (2)  the trial court properly instructed the jury on self-defense to assault; (3) the trial court was not required to give a unanimity jury instruction related to assault; (4) Grott cannot show that the prosecutor committed misconduct during oral arguments, or that any potential misconduct prejudiced him; (5) the trial court did not err by refusing to run the firearm enhancement sentences concurrently; (6) Grott did not receive ineffective assistance of counsel; and (7) Grott raises no reversible

issues in his Statement of Additional Grounds (SAG) for Review. However, Grott also argues, and the State concedes, that the trial court erred by requiring him to pay a criminal filing fee and interest on nonrestitution legal financial obligations (LFOs).[1]

Consequently, we affirm Grott's convictions, but remand to the trial court to strike provisions in his judgment and sentence requiring him to pay the criminal filing fee and interest on nonrestitution LFOs.

FACTS

A.    BACKGROUND

Grott enlisted in the Marines and was deployed to Afghanistan. In 2012, after leaving the Marines with an honorable discharge, he returned home to California. Grott's family reported that he had changed after being in Afghanistan.

Sometime in 2015, after suffering traumatic events in California, Grott moved to Tacoma and lived with his brother and two cousins. Grott's cousins were friends with Thomas who would spend time at Grott's house.

In August 2015, Grott's handgun was stolen, and Grott believed that Thomas had stolen it. On October 31, 2015, Grott had an argument with Thomas, which ended with Thomas shooting Grott's front door, nearly hitting Grott in the head. Thomas continued threatening to kill Grott in the subsequent months. After the October 2015 shooting, Grott experienced a

---

[1] In a footnote to its decision, our Supreme Court remanded for our possible consideration of an additional issue neither raised nor briefed by the parties. *State v. Grott*, 195 Wnd.2d 256, 264 n 1, 458 P.3d 750, 756 (2020). We decline to address this matter for the first time on remand. Should he choose to do so, Grott may raise this issue in a personal restraint petition. RAP at 16.4.

significant increase in anxiety and exhibited a heightened level of vigilance, often inspecting his house for potential threats. He also started carrying a gun. Grott became isolated and paranoid. Grott confided in a family member that he was hurting and afraid of someone, and that his life was in danger.

B.      THE SHOOTING

On February 1, 2016, Grott rode his skateboard past an AM/PM gas station. There were several people in the parking lot and in the convenience store associated with the gas station. From the street, Grott saw Thomas parked in the AM/PM parking lot. Thomas was in his car talking to a friend, Petra Smith. Grott, who was lawfully carrying a firearm, began firing his weapon toward Thomas, and continued to fire as he walked closer. Grott fired 48 rounds, killing Thomas who was facing Grott at the time of the shooting. In the course of the shooting, bullets from Grott's gun shattered the window of the AM/PM store. Thomas died at the scene; no one else was injured. Police officers found a firearm under Thomas's body.

After the shooting, Grott returned to his home. Shortly after, Grott learned about threats to his life, so Grott and his brother drove to California where Grott turned himself in.

The State charged Grott with first degree murder of Thomas, and seven counts of first degree assault of the bystanders of the shooting, namely Smith, Tannisha McCollum, Jeanette Basher, Robin Lyons, Shawn Chargualaf, Debora Green, and Karmanita Vaca. Each charge also carried an allegation that Grott was armed with a firearm.

C.    TRIAL

At trial, Grott presented two affirmative defenses: diminished capacity based on post-traumatic stress disorder (PTSD) and self-defense.  Grott presented Dr. Kevin Moore as an expert witness in support of his diminished capacity defense.  Grott did not testify.

1. *Dr. Moore*

Dr. Moore a psychiatrist, retired from the military, had several years of experience treating marines and combat veterans.  Dr. Moore examined Grott, who made statements about the shooting to Dr. Moore.  Dr. Moore diagnosed Grott with PTSD.  The court and counsel conducted voir dire of Dr. Moore prior to his testimony to discuss his opinions and his report.

The State moved to exclude Dr. Moore's testimony that Grott told him that Grott and Thomas "locked eyes"[2] before the shooting because the statements were hearsay.  The State sought to prevent Grott from admitting his own statements through Dr. Moore, arguing that it would have no opportunity for cross-examination on the subject, and that Grott could then use those admitted statements as support for his self-defense theory.  Grott argued that this statement

---

[2] Dr. Moore's report is not in our record on appeal.  However, the State's motion in limine quoted the following from Dr. Moore's report:

> When Grott "locked eyes" with Thomas on 1 February 2016, Grott was fearful that Thomas was going to kill him as he had repeatedly threatened.  After three months of repeated homicidal threats by Thomas, he reacted in self-defense by unholstering his handgun when he saw Thomas bend over in an apparent move to retrieve something from his car.  Trained as a Marine, Grott drew and fired the pistol he carried.  The pistol was registered, and he had obtained a permit for concealed carry after he became increasingly concerned for his safety and that of his family.

Clerk's Papers (CP) at 749.

was admissible because it was reasonably pertinent to Dr. Moore's diagnosis of PTSD under

Evidence Rule (ER) 803(a)(4).[3],[4]

After extensive discussion, the trial court ruled that Dr. Moore could not testify to Grott's

statement that he and Thomas locked eyes immediately before the shooting, concluding that it

was hearsay. The trial court permitted Dr. Moore to testify to Grott's "other statements of

patient history" because they were "reasonably pertinent for diagnosis and treatment." 15

Verbatim Report of Proceedings (VRP) at 1876-77. The trial court ruled that Dr. Moore could

testify about the history that Grott provided, as well as his evaluation, his diagnosis of Grott, and

his opinions. The trial court noted that Dr. Moore "certainly can say that somebody in Mr.

Grott's circumstances would see as threatening some things that [other people] might not see as

threatening." 15 VRP at 1867.

Dr. Moore testified that he and Grott discussed Grott's childhood, military service,

experiences after the military, issues with Thomas, the incident on October 31, 2015, the events

between October 31, 2015 and February 1, 2016, and the incident on February 1. Dr. Moore

testified that PTSD would likely result in someone over-perceiving or focusing on potential

threats in the environment, affecting how they interpret others' actions. When asked about

Grott's understanding of the risk of harm on February 1, Dr. Moore testified, "I don't think that

---

[3] ER 803(a)(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule.

[4] Grott did not argue that the statement was admissible under ER 702 or ER 703, which relate to statements that form the bases of expert opinion.

5

Mr. Grott felt that he had any other alternative but to defend himself." 15 VRP at 1965. Dr. Moore testified that Grott's ability to premeditate was impaired.

### 2. *Other Testimony*

Over thirty witnesses testified about the shooting, the subsequent investigation, and Grott's history. All but one alleged victim of first degree assault testified.

A retired marine testified that Grott's shooting was in accordance with "suppression fire and maneuver" tactics and his marine training.[5] 16 VRP at 2061. He further testified that marines are trained to respond to a threat to their life by engaging in suppression fire and maneuver tactics. He explained that suppression fire and maneuver is both a defensive and offensive maneuver, designed to give the marine the best chance of survival.

Grott's cousin testified that Thomas had told him that when he (Thomas) sees Grott, "it's either him or me." 14 VRP at 1842. Grott's cousin testified that before the shooting, he had conveyed Thomas's threat to Grott. He also testified that he took Thomas's threat seriously because he knew Thomas's reputation, and that "[Thomas] is gang-affiliated, and I know exactly what [he] does." 14 VRP at 1842. Grott's cousin reported being "[v]ery afraid" for Grott. 14 VRP at 1842.

---

[5] Testimony at trial established that "[s]uppression fire and maneuver" describes "laying down a maximum rate of fire towards [a] target to keep their head down, and you maneuver to it to destroy it," the goal being "to pin [the target] down and not be able to look up or have a chance to fire back at you." 16 VRP at 2053-54. Marines are trained in this tactic to provide "the best chance of survival." 16 VRP at 2062.

No. 50415-4-II

3. *Jury Instructions*

The jury was instructed on first degree murder, and the inferior degree offense of second degree murder. The trial court also instructed the jury on assault, including the common law definition of assault. Specifically, it instructed:

> An assault is an intentional shooting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A shooting is offensive if the shooting would offend an ordinary person who is not unduly sensitive.
>
> An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
>
> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.[6]

CP at 1018 (Jury Instruction 22).

Regarding the seven counts of assault, the trial court instructed the jury that to convict Grott of each of the seven counts of first degree assault, it had to find that the State proved beyond a reasonable doubt that Grott assaulted the named victim, with a firearm, and that Grott "acted with intent to inflict great bodily harm." CP at 1022-28 (Jury Instructions 26-32).

Grott proposed the following jury instruction for self-defense regarding first degree murder, citing 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 17.02 (4th ed. 2016) (WPIC):

---

[6] The trial court's jury instruction is substantially consistent with approved common law definition of assault. *See State v. Smith*, 159 Wn.2d 778, 781, 154 P.3d 873 (2007); *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006).

7

No. 50415-4-II

> It is a defense to a charge of Murder in the First Degree that the force used was lawful as defined in this instruction.
>
> . . . .
>
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

CP at 770. The trial court did not give Grott's proposed self-defense instruction. The trial court instead gave WPIC 16.02 for self-defense as defense to murder, and WPIC 17.02 for self-defense as defense to assault.[7] Grott did not take exception to the court's jury instructions or the court's failure to give his proposed self-defense instruction. The trial court instructed the jury that:

> It is a defense to a charge of murder or manslaughter that the homicide was justifiable as defined in this instruction.
>
> . . . .
>
> 3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the person, taking into consideration all of the facts and circumstances as they appeared to him, at the time of and prior to the incident.

CP at 1029 (Jury Instruction 33).

> It is a defense to a charge of assault that the force used was lawful as defined in this instruction.
>
> . . . .
>
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

---

[7] The trial court's instructions for defense to murder and defense to assault mirror WPIC 16.02 and WPIC 17.02, respectively.

8

CP at 1030 (Jury Instruction 34).

    4. *Closing Arguments*

    In closing argument, the State argued:

On February 1st, 2016, the defendant assaulted Petra Smith or Karmenita or Deborah or Jeanette. The assault was committed with a firearm. The defendant acted with intent to inflict great bodily harm, and the acts occurred in the state of Washington. There is really not a doubt about any of this.

18 VRP at 2234.

    [Grott] walked out past the fence, here, and out—around the building next door. What did he leave behind? He left Julian behind, dead. He left scores of people in that AM/PM terrified. Did he stick around to tell the police why he did what he did? No. He left.

      . . . .

    He sits in that house until his brother comes home, and they formulate a plan. They decide, we are going to California. We are afraid of retaliation. Really? Afraid of retaliation. Twenty cops at the house next door. You are afraid of retaliation? You walk up to them and say, by the way . . . he doesn't tell his brother what he did. His brother figures it [out] halfway down to California. You know that he knew what he did was wrong by how he behaved. Someone acting in self-defense doesn't behave that way. He flees all of the way to California.

18 VRP at 2232-33. In discussing assault, the State argued:

    What's an "assault"? An intentional shooting of another person with unlawful force. An act with unlawful force done with the intent to inflict bodily injury even though bodily injury doesn't have to be inflicted. Finally, an assault that creates apprehension or fear.

    In other words, if you shoot somebody and hit them, you have assaulted them. If you shoot at somebody trying to hit them and you miss, you have assaulted them. If you shoot at somebody to scare them and they feel fear, you have assaulted them. If you think about this in reasonable everyday terms, if somebody shot at you, it really wouldn't matter whether or not they intended to hit you or not. That is your level of fear. You would feel the harm. The harm is your fear.

    What we have in a situation like this—let me—it is what's referred to as transferred intent. If the person—the court is giving you this instruction. It's

Instruction 25. If the person acts with intent to kill or assault another, but the act harms a third person, the actor is deemed to have acted with intent to assault the third person. That kind of makes perfect sense.

18 VRP at 2234-35. The State also argued:

You have an instruction regarding self-defense. Now, on the surface, that seems pretty out there, but it is your duty to look at that instruction, and it is the State's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. We are going to go through it.

Self-defense requires that the defendant reasonably believed Julian Thomas intended to inflict death or great personal injury and that he reasonably believed that there was imminent danger of such harm being accomplished. There is no evidence—no evidence—that Julian presented an imminent danger. Imminent being right now, today, right at this moment, in the next two moments. There is no evidence of it. Absent evidence of it, you can't speculate. Julian—he had a gun in the car, so he may have been about to pull out the gun. There is no evidence that Julian presented an imminent danger.

I will grant you that the defendant may have thought he was—intended to inflict death or great personal injury at some point in the future. He may have thought it. You don't get to go over to somebody who you think might kill you at some point in the future and kill them. There are a lot of people who live in fear of somebody. Maybe it is an ex-spouse. Maybe it is an ex-coworker. Maybe it's just a neighbor. They don't get to go over to their house and kill them.

The fear has to be that the danger is imminent. You fear this person, and they're about to do something to you right now. There is no evidence Julian even knew that the defendant was there. How can he present an imminent danger if he doesn't even know that the defendant is present? There is no evidence that the defendant saw Julian do anything threatening. There is nothing that tells us that the defendant even believed he had to act in self-defense.

We need to conclude whether or not self-defense is appropriate based on the evidence, not on what we would like to speculate. Absent somebody explaining to us that the defendant—absent—there is no evidence that the defendant believed self-defense was necessary. Let's take it one step further, though, because the instruction doesn't let a defendant act in self-defense just on that alone.

The defendant has to employ force and means as a reasonably prudent person would under the same or similar circumstances as the circumstances appeared to the defendant. Okay. So, reasonable, prudent person skating by the AM/PM. In other words, was the force he used reasonable? Was it reasonable to

stand at that parking—at the sidewalk and fire through a parking lot and put down your suppression fire through the windows of a crowded AM/PM. Is that reasonable? Would any prudent person think that is reasonable? No. Was it reasonable to start firing that far away? Was it reasonable to fire 48 rounds, putting all of those people at risk?

If you have any doubt as to whether or not this was not reasonable, if you think for a moment this was not—that this was reasonable, look at those videos again. Tell that to Deborah Green. Tell that to Karmenita. Tell it to Petra. Their fear that he put them in is part of whether or not the force that he used was reasonable. We have to conclude that, if they got hit, it was reasonable because that's the force that he used. It was not reasonable. It wasn't self-defense. There is no reason that you should consider it to be self-defense.

18 VRP at 2240-42.

An abiding belief. An abiding belief is, are you confident the decision that you make today will stick with you into the future? Do you have an abiding belief that two years from now you will be as convinced then that the defendant is guilty as you are today? If you have abiding belief in the truth of the charge, you are convinced he is guilty.

At some point, you may be sitting in the jury room thinking to yourself, yeah, I know he is guilty, but . . . I'm going to ask you to pause and think for a second. I know he is guilty. At that moment, do you have an abiding belief in the truth of the charge? You know.

. . . .

. . . If you know that he did it, you have an abiding belief, and you know that he is guilty.

18 VRP at 2250-51.

The trial court excused the jury, stating that it had concerns about two things said during the State's closing arguments. 18 VRP at 2252. First, the trial court was concerned that the State argued that Grott's use of force should be measured "from the perspective of the people who were shot at." 18 VRP at 2255. The trial court noted that "[w]hether the use of force was necessary or not can only be viewed from the context and the perspective of the person

11

employing the force." 18 VRP at 2255. Second, the trial court was concerned about the State's description of an abiding belief. Grott noted that he had been concerned about counsel "start[ing] down the road of we didn't hear from, and it was kind of an implication that they don't know something because [Grott] didn't tell them. I think he stopped short. That's what perked me up more than anything else." 18 VRP at 2254. The trial court proposed issuing a curative instruction. Grott and the State agreed.

When the jury returned, the trial court instructed the jury that:

I do want to remind everyone that the lawyers' remarks, statements, and arguments are intended to help you understand the evidence and to apply the law. The lawyers' statements are not evidence. The law is contained in my instructions to you. You should disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

I was concerned that there may have been some confusion about when someone can use—employ force in defense of a charge of assault. Those are contained in the instructions. I would remind you that at least a portion of those instructions provide that the person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

18 VRP at 2260.

During the State's rebuttal closing argument, the State argued:

We talk about subjectively believing that Mr. Thomas posed a threat. We talk about the fear being imminent, not just that maybe down the road he will get you one day. He has been talking about threatening me. Maybe at some point down the line, he will get me. Actually, in the moment, as he is starting to shoot, does he imminently believe death is upon me? Finally, that what he did was what a reasonably prudent person would do.

Something that is extremely important to recognize and acknowledge here is that if you were to conclude that self-defense was lawful here, that conclusion holds no matter how many people could have died that day, because what you justify—when you say that something is a lawful act of self-defense, what you are justifying having a gun out, trained in any given direction, and pulling the trigger.

12

That's what you are justifying is, having the gun trained and pulling the trigger. That act is lawful.

18 VRP at 2308. Grott did not object during the State's closing arguments. The jury did not find Grott guilty of first degree murder, but instead found him guilty of second degree murder, and seven counts of first degree assault each with a finding that Grott committed the crime while armed with a firearm.

D.      SENTENCING

Grott had no criminal history and an offender score of zero. Grott argued that the trial court had discretion under *State v. Houston-Sconiers*[8] to impose concurrent sentences for firearm enhancements. The trial court found that it did not have discretion to impose concurrent sentences.

The trial court imposed an exceptional sentence below the standard range, sentencing Grott to 123 months for second degree murder, and 93 months on each of the seven counts of first degree assault, for a total of 603 months. The court determined Grott to be indigent. The trial court imposed legal financial obligations that included a criminal filing fee, a DNA (deoxyribonucleic acid) collection fee, and interest on the LFOs. Grott appeals.

ANALYSIS

A.      DR. MOORE'S TESTIMONY

Grott argues that the trial court denied his constitutional right to present a defense when it suppressed "highly relevant probative facts related to [his] observation immediately before and

---

[8] *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

during the shooting." Br. of Appellant at 29-30. Grott does not identify which "highly relevant probative facts" were admissible and excluded.

Grott claims that the trial court erred by excluding Dr. Moore's testimony that "Grott was unable to formulate the intent to murder based on his subjective fear that was influenced by his PTSD." Br. of Appellant at 31. But this argument is not supported by the record. Dr. Moore testified that in his professional opinion, Grott was able to form general intent, but that PTSD impaired his ability to premeditate. Grott has not pointed to any evidence in the record that suggests that Dr. Moore would have testified that Grott was unable to form the intent to murder.[9]

Grott also claims that the trial court "refus[ed] to permit Dr. Moore to testify to Grott's statements made during their [six] hours of medical diagnostic sessions." Br. of Appellant at 35. Grott's argument misrepresents the record. Dr. Moore testified at great lengths about his evaluation of Grott, including some of Grott's statements to him, and his opinions about Grott's mental state. The trial court permitted Dr. Moore to testify to Grott's statements that were "reasonably pertinent for diagnosis and treatment." 15 VRP at 1876.

The only excluded evidence expressly referenced in the record is Grott's statement to Dr. Moore that Grott and Thomas "locked eyes." *See* CP at 749. We examine the exclusion of this evidence and conclude the trial court did not err.

---

[9] Grott also states that Dr. Moore determined that Grott's PTSD "impaired his ability to formulate intent." Br. of Appellant at 39. Grott cites to 15 VRP at 1924-29, 1938, 1949, 1953, 1959-60, 1964. The record does not support his statement. Dr. Moore testified that Grott was able to form general intent, but that PTSD impaired his ability to premeditate.

1. *Grott's Statement to Dr. Moore*

Although Grott argues that the trial court "refused to permit Grott to discuss . . . his experience prior to and during the shooting incident" the only specific statement that the trial court excluded was Grott's statement that he and Thomas locked eyes immediately before the shooting. Br. of Appellant at 33. Accordingly, we apply Grott's arguments to the exclusion of this statement. Grott argues that his statements to Dr. Moore were admissible under ER 803(a)(4), and that the exclusion of the statements violated his right to present a complete defense of diminished capacity and self-defense.

When a defendant argues that an evidentiary ruling violates their constitutional right to present a defense, we apply a two-step standard of review to determine whether a trial court erred in an evidentiary ruling, and whether that ruling deprived a defendant's right to present a defense. *State v. Arndt*, 194 Wn.2d 784, 797, 45 P.3d 696, 703 (2019). In reviewing a trial court's evidentiary rulings for an abuse of discretion, we defer to the trial court's evidentiary rulings unless "'no reasonable person would take the view adopted by the trial court.'" *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

We review de novo whether a defendant was deprived of their right to present a defense. *Clark*, 187 Wn.2d at 649. Criminal defendants have the right to present a defense. U.S. CONST. amend. VI; WASH. CONST., art. I, § 22; *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994). However, because that right is not absolute, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Arndt*, 194 Wash.2d 812. Evidentiary "rules do not abridge an accused's right to present a

No. 50415-4-II

defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *U.S. v Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264, 140 L. Ed. 2d 413 (quoting *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)).

### a. The Trial Court Did Not Abuse its Discretion by Excluding Grott's Statement to Dr. Moore

Under ER 801(c), "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay generally is inadmissible under ER 802, but ER 803 provides several exceptions to that rule of inadmissibility. *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d 396, *review denied*, 168 Wn.2d 1042 (2010).

ER 803(a)(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This exception applies to statements reasonably pertinent to medical diagnosis. *State v. Doerflinger*, 170 Wn. App. 650, 664, 285 P.3d 217 (2012), *review denied*, 177 Wn.2d 1009 (2013).

Here, as the proponent of the evidence, Grott had the burden of demonstrating a proper purpose. *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Grott sought to introduce his statement to Dr. Moore that he and Thomas locked eyes under ER 803(a)(4) as a statement pertinent to diagnosis. The trial court ruled that while Dr. Moore could testify to his opinions and to how PTSD may have affected Grott on the day of the shooting, Grott could not introduce his statement through Dr. Moore that he and Thomas locked eyes.

16

Grott sought to introduce this statement to support his defense theory that he was threatened by Thomas and shot to defend himself. But under ER 803(a)(4) Dr. Moore could testify to this statement only if it was necessary and pertinent to his diagnosis. Grott never established at trial, and makes no attempt to explain on appeal, how the statement was necessary and pertinent to Dr. Moore's diagnosis. Dr. Moore diagnosed Grott with PTSD based on Grott's history, and then explained how Grott may have been impacted by PTSD, including opining that on the day of the shooting, Grott felt that he did not have "any other alternative but to defend himself." 15 VRP at 1964-65. Because Grott failed to demonstrate that his statement to Dr. Moore was necessary and pertinent to Dr. Moore's diagnosis of PTSD, the trial court did not abuse its discretion in ruling that the statement was hearsay, and that it was not admissible under ER 803(a)(4).

### b. The Exclusion of Inadmissible Hearsay Evidence Did Not Deprive Grott of His Right to Present a Defense

The defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). When a defendant argues that a trial court violated his Sixth Amendment right to present a defense, we employ a two-step standard of review. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696, 703 (2019). We first review evidentiary ruling for an abuse of discretion, then we review whether such rulings violated the defendant's right to present a defense de novo. *Arndt*, 194 Wn.2d 797.

"A defendant's constitutional right to present a defense is not absolute." *Arndt*, 194 Wn.2d 812. We balance the State's interest in excluding evidence against the defendant's need

for the desired information to be admitted. *Arndt*, 194 Wn.2d 812. However, "[i]n some instances regarding evidence of high probative value, it appears no state interest can be compelling enough to preclude its introduction consistent with [the defendant's right to present a defense]." *Arndt*, 194 Wn.2d at 812 (internal citation omitted). "[A]llowing [inadmissible hearsay] places the defendant's version of the facts before the jury without subjecting the defendant to cross-examination. This deprives the State of the benefit of testing the credibility of the statements and also denies the jury an objective basis for weighing the probative value of the evidence." *State v. Finch* 137 Wn.2d 792, 825, 975 P.2d 967 (1999) (plurality opinion) (internal citation omitted).

Here, Grott was able to present his theory of the case. He was able to present evidence about his fear and his state of mind at the time of the shooting. The statement Grott sought to admit is not highly probative. Considering this evidence, the State's interests in testing the evidence, the jury's ability to determine the value of the evidence, and the fact that Grott was able to argue his theory of the case, we hold that Grott's right to present a defense was not violated.

Grott also argues that "if the jury heard Grott's version of the incident, the result could have differed because the jury would have understood that Grott had reason to believe he was in imminent threat of death." Brief of Appellant at 34. In this argument, Grott does not mention that his out of court statements were covered under the medical diagnosis hearsay exception. Instead, he seems to argue that because he was denied a chance to put on substantive evidence relating to his own percipient knowledge of the incident via the testimony of his expert witness, he was denied his right to present a defense. Essentially Grott argues that the right to a defense

overrides the rule against hearsay.  But, as explained in *Arndt*, this is not the rule our Supreme Court requires us to follow, thus, Grott's argument fails.

We hold that the trial court did not deprive Grott of his right to present a defense.

B.       SELF-DEFENSE INSTRUCTION FOR ASSAULT

Grott argues for the first time on appeal that the trial court's self-defense instruction pertaining to first degree assault was constitutionally deficient.  Specifically, he asserts that the trial court failed to instruct the jury that it should consider the facts and circumstances known to Grott at the time of *and prior to* the incident, as provided in WPIC 17.02.[10]  Grott's argument fails.

Generally, we will not consider an issue raised for the first time on appeal.  RAP 2.5; *State v. Grott*, 195 Wnd.2d 256, 267, 458 P.3d 750 (2020).  But, an exception exists if an appellant can demonstrate a manifest error affecting a constitutional right.  *Grott*, 195 Wn.2d at 267.  To demonstrate manifest constitutional error, the appellant must identify a constitutional error and show actual prejudice—that the alleged error actually affected his rights at trial.  *Grott*, 195 Wn.2d at 269.

A jury instruction that misstates the law of self-defense is an error of constitutional magnitude that can be raised for the first time on appeal.  *State v. Kyllo*, 166 Wn.2d 856, 862,

---

[10] Grott proposed WPIC 17.02 as an instruction for defense of murder, including the bracketed language of "prior to."  CP at 770, 771.  But WPIC 17.02 provides that the instruction should be used "for any charge other than homicide or attempted homicide.  If homicide is involved, use WPIC 16.02."  11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02 note on use at 181 (4th ed. 2016).  Here, the trial court instructed the jury in accordance with WPIC 16.02 for defense of murder, including the bracketed language of "prior to."  CP at 1029.  Grott did not take exception to the trial court's instructions.

215 P.3d 177, 180 (2009). This is because the State must disprove self-defense beyond a reasonable doubt when properly raised. *Kyllo*, 166 Wn2d at 862. Accordingly, we will review an alleged error that a self-defense jury instruction misstates the law raised for the first time on appeal. RAP 2.5(a)(3); *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012).

Jury instructions are sufficient if they allow both parties to argue their theory of the case, are not misleading, and, when read as a whole, properly inform the trier of fact of the applicable law. *State v. Harris*, 164 Wn. App. 377, 383, 263 P.3d 1276 (2011). We evaluate a challenged jury instruction in the context of the instructions as a whole. *McCreven*, 170 Wn. App. at 461-62. Self-defense instructions must make the relevant legal standard "'manifestly apparent to the average juror.'" *State v. Allery*, 101 Wn.2d 591, 595, 682 P.2d 312 (1984) (quoting *State v. Painter*, 27 Wn. App. 708, 713, 620 P.2d 1001 (1980)). The jury is to asses a claim of self-defense "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees." *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). The jury must evaluate self-defense from the defendant's point of view as conditions appeared to him at the time of the act. *Allery*, 101 Wn.2d at 594.

Here, the trial court instructed the jury on self-defense to assault, following WPIC 17.02.

It is a defense to a charge of assault that the force used was lawful as defined in this instruction.

. . . .

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

CP at 1030 (Jury Instruction 34).[11]  Grott argues that the trial court erred by failing to include the bracketed language of "and prior to."  Br. of Appellant at 53.  Grott claims that the instruction "did not explicitly inform the jury that it should consider the facts and circumstances known to Grott *prior to* the incident."  Br. of Appellant at 53.

We hold that the failure to include the "prior to" language did not prevent the jury from considering the events leading up to the shooting in determining whether Grott was acting in self-defense.  Although it omitted this language from the instruction, the trial court explicitly instructed the jury that it was to consider "all of the facts and circumstances known to the person at the time of the incident."  CP at 1030.  In addition, this instruction required the State to disprove self-defense beyond a reasonable doubt.

When read as a whole, the trial court's jury instructions correctly stated the law, did not restrict Grott's ability to argue his theory of the case, and made it "manifestly apparent" that the jury could consider the prior events between Grott and Thomas.[12]  Accordingly, we hold that the trial court's instructions on self-defense were a proper statement of the law and that the legal standard of self-defense was manifestly apparent to the jury.

E.      ALTERNATIVE MEANS OF ASSAULT WITHOUT A UNANIMITY INSTRUCTION

Grott argues that he was denied his constitutional right to jury unanimity when he was "charged with assault in the first degree by a single means, but the jury was presented with argument exclusively defining the uncharged alternative means."  Br. of Appellant at 63.  He

---

[11] The trial court's instruction followed the language set forth in WPIC 17.02.

[12] Moreover, we note that Grott made arguments at the close of trial that the victim "very likely" had a loaded gun in his hand and was facing Grott moments before and during the shootout. VRP at 2282.

No. 50415-4-II

argues that the "error was compounded by the jury instruction defining assault by alternative means." Br. of Appellant at 62. Grott's claim fails.

Criminal defendants have a constitutional right to a unanimous jury verdict. *State v. Armstrong*, 188 Wn.2d 333, 339, 394 P.3d 373 (2017); *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020). We review constitutional issues de novo. *Armstrong*, 188 Wn.2d at 339. Grott's claim fails because the jury was presented with only one means of assault, and the common law definitions of assault do not constitute alternative means of committing assault.

Assault in the first degree is an alternative means crime. *State v. Smith*, 159 Wn.2d 778, 784, 154 P.3d 873 (2007). Our Supreme Court has limited the reach of the alternative means doctrine to "those alternative means directly provided for by the assault statutes." *Smith*, 159 Wn.2d at 784. RCW 9A.36.011 describes three means of committing first degree assault:

> (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:
>     (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or
>     (b) Administers, exposes, or transmits to or causes to be taken by another, poison, the human immunodeficiency virus as defined in chapter 70.24 RCW, or any other destructive or noxious substance; or
>     (c) Assaults another and inflicts great bodily harm.

Former RCW 9A.36.011 (1997).

Washington recognizes three common law definitions of assault: (1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm. *Stevens*, 158 Wn.2d at 310-11. The common law

22

definitions of assault do not constitute alternative means of committing assault. *Smith*, 159 Wn.2d at 784.

The State charged Grott with seven counts of first degree assault with a firearm under RCW 9A.36.011(1)(a). As Grott acknowledges, the trial court instructed the jury on only one means of committing first degree assault. The jury instructions also gave the common law definitions of assault.

Grott contends that the State argued in its closing argument that he committed first degree assault based on uncharged alternative means of intending to cause fear—an alternative means created by the common law definition of assault. Therefore, he argues that without a unanimity instruction, the jury would have been confused about whether it could convict him based on the State's argument, or based on the charged means, as provided in the jury instructions.

Grott's argument rests on the false premise that the common law definitions of assault constitute alternative means of assault. Washington courts have repeatedly held that the common law definitions of assault do not constitute alternative means. *Smith*, 159 Wn.2d at 784-86 (noting the "line of decisions . . . holding that the reach of the alternative means doctrine has not been extended to encompass a mere definitional instruction"). Moreover, where, as here the jury was instructed on only one means of committing assault, this is not an alternative means case. CP at 1022-28; s*ee Smith*, 159 Wn.2d at 790. Grott's argument fails.

F.       PROSECUTORIAL MISCONDUCT

Grott argues that the prosecutor committed flagrant and ill-intentioned misconduct by (1) commenting on Grott's right to silence; (2) misstating the law on (a) reasonable doubt, (b) intent related to assault, (c) self-defense; (3) shifting the burden of proof of justifiable homicide and

self-defense; (4) appealing to the passions and prejudices of the jury; and (5) expressing a personal opinion on Grott's guilt. We disagree.

To establish prosecutorial misconduct, a defendant bears the burden of proving that "'the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). If a defendant establishes that the prosecutor's conduct was improper, we then determine whether he was prejudiced. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Where, as here, a defendant fails to object to alleged prosecutorial misconduct, he is deemed to have waived any error unless he shows the misconduct "was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. To meet this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

In reviewing a prosecutor's comments during closing argument, we look to the context of the total argument, the issues presented in the case, the evidence addressed in the argument, and the jury instructions. *State v. Jackson*, 150 Wn. App. 877, 883, 209 P.3d 553 (2009). A prosecutor has wide latitude to draw reasonable inferences from the evidence and to express such inferences to the jury during closing argument. *Thorgerson*, 172 Wn.2d at 448.

1. *Comment on Grott's Right to Silence*

Grott argues that the prosecutor impermissibly commented on his silence and lack of testimony. We disagree.

The Fifth Amendment privilege against self-incrimination prohibits the State from using a defendant's pre-arrest silence as substantive evidence of guilt. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008).

Grott argues that the State used two instances of Grott's pre-arrest silence as substantive evidence of guilt—his fleeing the scene after the shooting and his failure to mention self-defense to police officers. Grott contends that the State's remark about Grott fleeing the scene after the shooting allowed an inference that "if Grott was innocent, it was his job to explain this to the jury." Br. of Appellant at 69. He further claims that the prosecutor improperly "argued that if Grott genuinely acted in self-defense[,] he would have explained this to the police." Br. of Appellant at 69. He contends that the prosecutor argued for the jury to infer guilt based on Grott's silence.

Grott mischaracterizes the evidence and the State's closing argument. The prosecutor's remarks about Grott leaving the scene and Washington State were based on admitted evidence that Grott fled the scene of the shooting, and then drove to California.[13] Evidence of flight from a crime scene is admissible as evidence of guilt. *State v. McDaniel*, 155 Wn. App. 829, 854, 230 P.3d 245 (2010). Further, the prosecutor's comment that "someone acting in self-defense doesn't behave that way[,] [h]e flees all of the way to California" is a reasonable argument based on the evidence and theories presented at trial. VRP at 2233. And, prosecutors are afforded

---

[13] Grott did not object to the admission of evidence of his flight from the scene.

wide latitude in closing arguments to draw inferences from the evidence. *Thorgerson*, 172 Wn.2d at 448. Accordingly, the prosecutor's statements were not improper comments on Grott's silence.

The prosecutor did not argue that Grott's silence was substantive evidence of guilt. Instead, the State argued its theory of the crime, referencing evidence in the record, which was not improper. *See State v. Nordlund*, 113 Wn. App. 171, 189-90, 53 P.3d 520 (2002) (holding that the State did not commit prosecutorial misconduct by referring to admissible evidence showing noncooperation of the defendant is an inference to consciousness of guilt). Grott fails to demonstrate that the prosecutor's argument was improper.

2. *Misstatement of the Law*

Grott argues that the prosecutor misstated the law on (a) reasonable doubt, (b) intent related to assault, and (c) self-defense. We disagree.

A prosecutor commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Such misstatements have "grave potential to mislead the jury." *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). The court shall declare the law, and legal questions are decided by the court, not the jury. *State v. Clausing*, 147 Wn.2d 620, 629, 56 P.3d 550 (2002). "'[S]tatements as to the law in closing argument are to be confined to the law set forth in the instructions.'" *State v. Huckins*, 66 Wn. App. 213, 217, 836 P.2d 230 (1992), *review denied*, 120 Wn.2d 1020 (1993) (quoting *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, *Mak v. Washington*, 479 U.S. 995, 107 S. Ct. 599, 93 L. Ed. 2d 599 (1986)).

a. *Reasonable Doubt*

Grott claims that the prosecutor misstated the standard of reasonable doubt. Specifically, he asserts that the prosecutor lowered its burden of proof by encouraging the jury to "follow their gut intuition" when arguing "'you know that he did it, you have an abiding belief, and you know that he is guilty.'" Br. of Appellant at 71 (quoting 18 VRP at 2251). Grott's claim fails.

After the State's closing argument, the trial court excused the jury and noted that it "always had some concerns about the words 'abiding belief'" and wanted to address the issue with the parties before continuing. 18 VRP at 2252. Grott's trial counsel told the court that he was not concerned about the State's argument. The parties agreed that the court would remind the jury that the lawyers' remarks and arguments are intended to help the jury understand evidence, that the lawyers' remarks and arguments are not evidence, that the law is contained in the court's instructions, and that the jury should disregard any remark not supported by evidence or by the law in the court's instructions.

Grott argues that the prosecutor's comment that abiding belief is "to know" relieved the State of its burden of proof under *State v. Oxier*,[14] *United States v. Hernandez*,[15] *State v. Lindsay*,[16] and *In re the Personal Restraint of Glasmann*.[17] Those cases are inapplicable here.

---

[14] 175 W. Va. 760, 764, 338 S.E.2d 360 (1985).

[15] 176 F.3d 719, 727 (3d Cir. 1999).

[16] 180 Wn.2d 423, 436, 326 P.3d 125 (2014).

[17] 175 Wn.2d 696, 713, 286 P.3d 673 (2012).

*Oxier*, a West Virginia case from 1985, does not support Grott's claim. In that case, the court, although disapproving of the prosecutor's statement,[18] stated, "As this case is reversed on other grounds, we need not determine whether the prosecutor's closing remarks constituted plain error because defense counsel failed to object to them." *Oxier*, 175 W. Va. at 763.

*Hernandez*, a Third Circuit Court of Appeals case from 1999, addressed the defendant's challenge to the district court's oral instruction to the jury about reasonable doubt.[19] *Hernandez*, 176 F.3d at 727. The statements made by the court in *Hernandez* are distinguishable from the argument here.

*Lindsay* is also inapplicable. There, the prosecutor made a "jigsaw puzzle analogy," which several cases had previously criticized. *Lindsay*, 180 Wn.2d at 436. The Court held that "the quantifying of the standard of proof by means of this jigsaw puzzle analogy [was] improper." *Lindsay*, 180 Wn.2d at 436.

And lastly, *Glasmann* is also inapplicable. There, the prosecutor argued that "in order to reach a verdict, [the jury] must decide whether the defendant told the truth when he testified," insinuating that the jury could acquit only if it believed the defendant. *Glasmann*, 175 Wn.2d at

---

[18] In *Oxier*, the prosecutor in closing argument stated: "We don't want any mealy-mouthed verdicts from any jury saying oh, no, he's not guilty and they didn't prove this and they didn't prove that. If you have a gut reaction in your heart right now, on behalf of the citizens of the State of West Virginia I ask that you find this defendant guilty." *Oxier*, 175 W. Va. at 764 n.5.

[19] The District Court told the jury: "How do you decide what is proof beyond a reasonable doubt? There is no specific definition. I'm sorry to tell you, but there are none. It's what you in your own heart and your own soul and your own spirit and your own judgment determine is proof beyond a reasonable doubt." *Hernandez*, 176 F.3d at 729 (emphasis omitted).

713. The Court held that the prosecutor misstated the burden of the proof, noting that the error "in and of itself would probably not justify reversal." *Glasmann*, 175 Wn.2d at 714.

The prosecutor did not misstate the law. Accordingly, we hold that Grott's argument that the prosecutor committed misconduct by misstating the standard for reasonable doubt fails.

b. *Intent*

Grott argues that the prosecutor misstated the law on intent required for first degree assault. The portion of the record that he cites to is the prosecutor's discussion of transferred intent. But Grott's argument is that the common law definitions of assault constitute elements of first degree assault, and the prosecutor's description of the common law definitions of assault encouraged the jury to convict based on an "uncharged element of assault." Br. of Appellant at 77. Grott's argument fails because, as discussed above, the common law definitions of assault do not create alternative means or elements of assault, thus the prosecutor's argument was proper.

c. *Self-Defense*

Grott argues that the prosecutor misstated the law on self-defense "by arguing that if the victims' experienced fear, Grott was guilty because he would have been guilty if they had been struck by a bullet." Br. of Appellant at 78. We disagree.

In arguing against Grott's self-defense theory, the prosecutor stated:

> If you have any doubt as to whether or not this was not reasonable, if you think for a moment this was not—that this was reasonable, look at those videos again. Tell that to Deborah Green. Tell that to Karmenita. Tell it to Petra. Their fear that he put them in is part of whether or not the force that he used was reasonable. We have to conclude that, if they got hit, it was reasonable because that's the force that he used. It was not reasonable. It wasn't self-defense. There is no reason that you should consider it to be self-defense.

No. 50415-4-II

18 VRP at 2242.

Grott fails to mention that the trial court was concerned about the prosecutor's statement and, after discussion with counsel, issued a curative instruction. Specifically, the court instructed the jury:

> I was concerned that there may have been some confusion about when someone can use—employ force in defense of a charge of assault. Those are contained in the instructions. I would remind you that at least a portion of those instructions provide that the person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

18 VRP at 2260.

To the extent that Grott argues that the trial court's instruction was insufficient and that prejudice resulted in spite of it, he failed to challenge the instruction at trial, and fails to provide meaningful argument or authority on appeal.

Even if the prosecutor's statement was improper, Grott has not demonstrated that the court's curative instruction did not remedy any prejudice. The trial court, in addressing concerns about the State's closing argument, raised precisely this issue. The trial court offered a curative instruction, which Grott agreed to. He has not demonstrated that the curative instruction was insufficient. We presume that the jury follows instructions. *Anderson*, 153 Wn. App. at 428. Accordingly, Grott fails to demonstrate that any alleged misconduct was flagrant and ill intentioned.

### 3. *Burden of Proof for Justifiable Homicide and Self-Defense*

Grott argues that the State shifted the burden of proof on self-defense and justifiable homicide. Specifically, Grott argues that the prosecutor shifted the burden of proof when he

30

argued: "Absent somebody explaining to us that the defendant—absent—there is no evidence that the defendant believed self-defense was necessary." Br. of Appellant at 79-80 (emphasis omitted) (quoting 18 VRP at 2241). We hold that the State did not shift the burden of proof.

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." *State v. Lindsay*, 180 Wn.2d at 434.

The trial court sua sponte raised concerns regarding possible burden shifting. 18 VRP at 2254. When the trial court raised its concerns about the State's argument, Grott noted that he had been concerned about counsel "start[ing] down the road of we didn't hear from [Grott], and it was kind of an implication that they don't know something because [Grott] didn't tell them. *I think he stopped short.* That's what perked me up more than anything else." 18 VRP at 2254 (emphasis added).

Grott's trial counsel was correct. The prosecutor stopped short of shifting the burden. Thus, Grott's argument fails.

4. *Appeal to the Passions and Prejudice of the Jury*

Grott argues that the prosecutor appealed to the passions and prejudice of the jury "by arguing they needed to find Grott guilty of assault or else they would be sending a message to the world that it is ok[ay] to shoot a gun 'no matter how many people could have died that day.'" Br. of Appellant at 82 (quoting 18 VRP at 2308). We disagree.

Prosecutors commit misconduct when they use arguments to inflame the passions or prejudices of the jury. *Glasmann*, 175 Wn.2d at 704. It also is improper for a prosecutor to tell the jury that its verdict will reflect on society in general or send a message to others. *State v.*

*Powell*, 62 Wn. App. 914, 918, 816 P.2d 86 (1991). Arguments appealing to the passions or prejudices of the jury create a danger that the jury may convict for reasons other than the evidence. *State v. Ramos*, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011).

Grott misrepresents the record. The prosecutor neither argued nor suggested that the jury should find Grott guilty to "send a message." And the prosecutor did not encourage the jury to convict Grott based on a sense of social responsibility or to send a message. The prosecutor was applying the self-defense principles to the facts of the case. Because the prosecutor did not make a "send a message" argument, Grott's claim that the prosecutor committed misconduct by arguing that the jury "would be sending a message" fails. Br. of Appellant at 82.

5. *Expression of Personal Opinion on Grott's Guilt*

Grott argues that the prosecutor argued his personal opinion of Grott's guilt. Specifically, he argues that the prosecutor erred in stating, "There is really not a doubt about any of this."[20] 18 VRP at 2234. We disagree.

A prosecutor may not express a personal opinion regarding the defendant's guilt. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). However, a prosecutor may argue from the facts presented at trial that the defendant is guilty. *McKenzie*, 157 Wn.2d at 53. "'In other words, there is a distinction between *the individual opinion of the prosecuting attorney, as an independent fact, and an opinion based upon or deduced from the testimony in the case*.'" *McKenzie*, 157 Wn.2d at 53 (quoting *State v. Armstrong*, 37 Wash. 51, 54-55, 79 P. 490 (1905)).

---

[20] Grott did not object below. Grott fails to provide relevant authority or meaningful argument supporting his contention that the prosecutor's statement was improper. He also fails to argue that the allegedly improper statement was so flagrant and ill-intentioned that it could not have been addressed with a curative instruction.

Here, the prosecutor did not express his personal opinion about Grott's guilt. Considering the prosecutor's statement in the context of the entire argument, the prosecutor was arguing that it had proved the elements of first degree assault. The prosecutor is entitled to argue reasonable inferences from the evidence, and to argue in support of the State's theory. *Thorgerson*, 172 Wn.2d at 448. Because the argument was not improper, Grott's argument fails.

G.      FIREARM ENHANCEMENTS

Grott argues that the sentencing court erred by refusing to impose concurrent sentences for the firearm enhancements based on his diminished capacity. He argues that the court misunderstood its authority to impose such a sentence. Grott's brief does not provide any citation to the record or any explanation of the trial court's alleged error. Instead he baldly contends that the firearm enhancement portion of his sentence violates the Eighth Amendment's protection against cruel and unusual punishment. This argument fails.

Pursuant to RCW 9.94A.533(3)(e), firearm enhancements are "mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." This statutory language deprives sentencing courts of the discretion to impose an exceptional sentence with regard to firearm enhancements. *See* RCW 9.94A.533(3)(e); *State v. Brown*, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), *overruled on other grounds by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

No. 50415-4-II

At sentencing, the court found that the evidence regarding Grott's PTSD and how it contributed to his conduct was "compelling," and found "based on the purposes of the Sentencing Reform Act [of 1981], chapter 9.94A RCW, that the operation of the multiple offense policy per RCW 9.94A.589 was clearly excessive under the circumstances of this case, at least as it relates to the stacking of the Assault 1 counts and in consideration of the mandatory firearm sentencing enhancements for all counts." Suppl. CP at 1119. The court also found that it did not have discretion to impose sentencing enhancements concurrently, and that *Houston-Sconiers* was inapplicable.

The trial court was correct; *Houston-Sconiers* is inapplicable here. In *Houston-Sconiers*, the Court held that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant." 188 Wn.2d at 21. The reasoning in *Houston-Sconiers* was based on neurological differences based on age—not on diminished capacity due to PTSD.[21] Grott's claim fails.

---

[21] Grott argues that "'sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements' when sentencing people with diminished capacity[.]' *Houston-Sconiers*, 188 Wn.2d at 8-9." Br. of Appellant at 93-94 (internal quotation marks omitted). *Houston-Sconiers* does not stand for that proposition. *Houston-Sconiers* held:

> Because "children are different" under the Eighth Amendment and hence "criminal procedure laws" must take the defendants' youthfulness into account, sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements when sentencing juveniles in adult court, regardless of how the juvenile got there.

188 Wn.2d at 9.

34

H. INEFFECTIVE ASSISTANCE OF COUNSEL

Grott asserts that trial counsel was ineffective for failing to object to prosecutorial misconduct, and for failing to request a "conditioned response" instruction.[22] Br. of Appellant at 98. We disagree.

1. *Legal Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To show that he received ineffective assistance of counsel, a defendant must show that defense counsel's conduct was deficient and that the deficient performance resulted in prejudice. *Grier*, 171 Wn.2d at 32-33. "Because both prongs must be met, a failure to show either prong will end our inquiry." *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

To establish deficient performance, the defendant must show that trial counsel's performance fell "below an objective standard of reasonableness." *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Legitimate trial strategy and tactics cannot form the basis of a finding of deficient performance. *Grier*, 171 Wn.2d at 33. Prejudice can be shown only if "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been

---

[22] Grott also asserts that trial counsel was ineffective for failing to object to the first aggressor jury instruction. Grott does not offer any argument or discussion regarding his assertion. We do not consider this argument. *See* RAP 10.3; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

different." *State v. Gerdts*, 136 Wn. App. 720, 726, 150 P.3d 627 (2007). We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

There is a strong presumption that defense counsel's conduct was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336. We do not consider matters outside the trial record on direct appeal. *Classen*, 4 Wn. App. 2d at 535.

2. *Prosecutorial Misconduct*

Grott argues that his trial counsel rendered ineffective assistance of counsel by failing to object to "many instances of prejudicial misconduct." Br. of Appellant at 96. Grott fails to provide citation to the record, identifying the statements that he contends his trial counsel should have objected to, and he fails to provide meaningful argument or relevant authority. Moreover, he does not provide argument that his trial counsel's performance was deficient, or prejudiced the outcome, or was not a reasonable trial strategy.

However, even assuming that Grott argues that his trial counsel was ineffective for failing to object to the prosecutorial misconduct discussed above, Grott's claims fail.

When a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection would likely have succeeded. *Gerdts*, 136 Wn. App. at 727. "The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." *State v. Edvalds*, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010), *review denied*, 171 Wn.2d 1021 (2011). "'Only in egregious circumstances, on

testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989)).

Grott claims that the prosecutor committed misconduct during closing arguments by (a) commenting on Grott's silence, (b) misstating the law on intent related to assault, (c) shifting the burden of proof of justifiable homicide and self-defense, (d) appealing to the passions and prejudices of the jury, and (e) expressing a personal opinion on Grott's guilt, (f) misstating the law on reasonable doubt, and (g) misstating the law on self-defense.

As discussed above, Grott fails to demonstrate that the prosecutor's arguments were improper; therefore, he cannot show that an objection to those arguments would have succeeded. Accordingly, Grott cannot establish that counsel was ineffective for failing to object.

As to Grott's arguments on failing to object because the prosecutor misstated the law on reasonable doubt or misstated the law on self-defense, Grott cannot show prejudice. The trial court issued a curative instruction, and Grott does not argue that the instruction was ineffective. Accordingly, we hold that Grott's claim of ineffective assistance of counsel fails.

3. *Conditioned Response*

Grott asserts that it was "prejudicial error not to request a 'conditioned response' defense instruction." Br. of Appellant at 98. Specifically, Grott argues that he was entitled to an instruction that he was unconscious at the time of the crime, and therefore his actions were involuntary under *State v. Utter*, 4 Wn. App. 137, 141, 479 P.2d 946 (1971). We disagree.

"Where [a] claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show [that] he was entitled to the instruction,

[that] counsel's performance was deficient in failing to request [the instruction], and [that] the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012). Counsel is not ineffective for not requesting an instruction to which that defendant was not entitled. *Classen*, 4 Wn. App. 2d at 536.

In *Utter*, the defendant was charged with murder in the second degree. The jury convicted the defendant of manslaughter. *Utter*, 4 Wn. App. at 138. At trial, the defendant testified that as a result of jungle warfare training, he reacted violently toward people approaching him unexpectedly from behind. *Utter*, 4 Wn. App. at 139. The defendant presented expert witness testimony about "conditioned response." *Utter*, 4 Wn. App. at 139. The expert defined "conditioned response" as "'an act or a pattern of activity occurring so rapidly, so uniformly as to be automatic in response to certain stimulus.'" *Utter*, 4 Wn. App. at 139.

The appellate court held that although the defendant's theory that he acted automatically is similar to diminished capacity, "it is nevertheless distinct from that concept" and relates to the actus reus necessary to commit the crime. *Utter*, 4 Wn. App. at 141. "An 'act' committed while one is unconscious is in reality no act at all. It is merely a physical event or occurrence for which there can be no criminal liability." *Utter*, 4 Wn. App. at 143. Because the evidence did not show that the defendant was unconscious or in an "automatistic" state at the time of the crime, the court affirmed the trial court's refusal to give a jury instruction on involuntarily committing the crime. *Utter*, 4 Wn. App. at 143.

Similarly here, the defense was diminished capacity and the evidence at trial did not support giving an instruction telling the jury that the assault was the result of a "learned physical reaction to external stimuli which operate[s] automatically." *Utter*, 4 Wn. App. at 141. Grott

argues that he was entitled to a conditioned response instruction because "Dr. Moore explained that Grott acted in an automatistic, involuntary capacity when he shot at [Thomas]. RP at 1952-53." Br. of Appellant at 100. Grott again misrepresents the record. Dr. Moore's testimony at 18 VRP at 1952-53 does not support Grott's statement, and the record contains no showing that Dr. Moore ever concluded that Grott was acting involuntarily.

Grott has not demonstrated that he was entitled to a conditioned response instruction, and therefore has not demonstrated that counsel was ineffective for failing to request the instruction. Grott's argument is unsupported by the law and the record, and thus, fails.

I.  CUMULATIVE ERROR

Grott argues that viewed together, each of "the errors created a cumulative and enduring prejudice that was likely to have materially affected the jury's verdict." Br. of Appellant at 102.

"The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014). However, here, Grott fails to demonstrate any error. Even assuming without deciding that the State made improper comments during closing argument, Grott has failed to demonstrate that the trial court's curative instruction was ineffective, or that any prejudice resulted. The trial court instructed the jury that the prosecutor's statements were not evidence to be considered and should be disregarded if not supported by the evidence or the law as instructed. Therefore, this challenge fails.

J.  LEGAL FINANCIAL OBLIGATIONS (LFOS)

Grott filed a "Motion to Supplement Brief to Waive Criminal Filing Fee and/or Second DNA Fee in Indigent Cases" and a supplemental brief. In his supplemental brief, Grott argues

39

that this court should vacate imposition of the criminal filing fee and the DNA fee under the newly amended RCW 43.43.7541. The State concedes that the imposition of the criminal filing fee and the interest accrual should be stricken.[23] We accept the State's concession regarding these fees, but we reject Grott's argument regarding imposition of the DNA fee.

In 2018, the legislature amended RCW 43.43.7541, providing that the DNA collection fee is no longer is mandatory if the offender's DNA previously had been collected because of a prior conviction. The amendments also prohibit the imposition of a criminal filing fee on indigent defendants and the imposition of interest accrual on nonrestitution LFOs. RCW 36.18.020(2)(h); RCW 10.82.090(1). These provisions apply prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

Grott argues that we should strike the DNA fee. Grott contends that he has been previously convicted of a felony and had his DNA collected, and therefore the DNA collection fee should also be stricken. The record on appeal refutes his claim that his DNA was previously collected. At sentencing, the State provided a "statement of prior record and offender score," which the State, Grott, and Grott's trial counsel signed, showing that Grott had no prior convictions and an offender score of zero. CP at 1090-91.

Regarding the criminal filing fee, and the interest provision, the State, concedes that we should remand for the sentencing court to strike the criminal filing fee and interest accrual on nonrestitution LFOs. We accept the State's concession.

_____

[23] Grott does not argue that the interest accrual provision be stricken, but because we remand this case for correction of the judgment and sentence, and because the State concedes this issue, we address it.

Because there is no evidence in the record that Grott was previously ordered to pay a DNA fee, we deny his request to strike the DNA collection fee. However, based on changes in the law that occurred after the trial court sentenced Grott, the trial court must now strike the criminal filing fee and any interest accrual provisions on nonrestitution LFOs.

SAG

Grott raises two arguments in his SAG. First, he contends that the prosecutor committed misconduct by calling witnesses that the prosecutor knew would lie. He contends that Petra Smith had been threatened by the victim's "people." SAG at 1. There is no evidence in the record related to Smith receiving threats or the prosecutor's knowledge that Smith would perjure herself. We do not consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Because Grott's argument relates to matters outside the record, his claim is not properly before us, and is more appropriately raised in a personal restraint petition.

Grott also, for the first time on appeal, argues that he was prevented from arguing that the victim was in possession of a firearm at the time Grott started shooting because the State destroyed evidence. He argues that the State destroyed evidence by wiping the victim's firearm with bleach. But the record shows that there was argument and evidence that the victim was found lying on top of a gun in his car. Grott does not explain how he was prevented from arguing that the victim was in possession of a firearm. Accordingly, his claim fails.

No. 50415-4-II

CONCLUSION

In conclusion, we affirm Grott's convictions, but remand to the trial court to strike the $200 criminal filing fee, and the interest provision on nonrestitution LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Melnick, J.

_____
Sutton, A.C.J.

42